No. 34,122

Frank G. Drenning, *Appellant*, v. The Board of Commissioners of the City of Topeka, a Municipal Corporation of the First Class, *Appellee.*

(81 P. 2d 720)

Opinion filed July 30, 1938.

*Frank G. Drenning,* of Topeka, *pro se.*

*Ralph W. Oman,* city attorney, and *William A. Dumars,* assistant city attorney, for the appellee.

The opinion of the court was delivered by

Harvey, J.: Plaintiff, a resident taxpayer of the city of Topeka, proceeding under G. S. 1935, 13-1403 and 60-1121, brought this suit to enjoin the governing body of the city, hereinafter referred to as

the city, from purchasing certain described real property for the site of a public building for the use of the city, and from entering into any contract for the construction of such building on a designated block within the city, and from issuing any temporary notes or negotiable bonds by virtue of the authority of a bond election held on April 6, 1937. The trial resulted in a general judgment for defendant. Plaintiff appealed.

Briefly stated, insofar as it is material here and omitting formal parts, it was alleged in the petition, filed April 7, 1938, that on March 8, 1937, the city passed a resolution to submit to the voters April 6, 1937, a proposition to vote bonds, in an amount not to exceed $850,000, for the purchase of a site or the constructing and equipping of a public building, or both, for the city; "that said proposal be for the erection and equipping of a public building or the purchase of a site, or both, at an estimated cost of $1,545,454, the city's share of which shall not exceed the proposed issue of bonds in the amount of $850,000; provided, however, that in the event a federal grant be not obtained therefor, said building be constructed and equipped and a site purchased, if one be deemed necessary, by the use of the funds derived from the sale of bonds in an amount not exceeding $850,000," and in the event of a favorable vote that the city forthwith make application to the federal government for the approval of the project and the allowance of a grant to assist in its completion, and providing for a proclamation to be issued and other steps taken for the holding of the election. The proclamation was duly issued and published and the form of ballot provided by defendant and the election held, with the result that 12,587 qualified electors voted in favor of the proposition and 7,708 against it. The resolution, proclamation and ballot were attached and made a part of the petition. That prior thereto and on August 30, 1935, the city had adopted a resolution by which an application was made to the appropriate federal agency for aid in financing the construction of a city building at an estimated cost of $850,000. It was alleged that the city acted in bad faith in making such application and in not furnishing plans and other information requested by the federal agency, with the result that when the application was refiled after the election in 1937 federal funds to aid such a project were not available; that the proposition set out in the ballot to spend the entire amount of $1,545,454 if federal aid could be obtained, but only the proceeds of the bonds, $850,000, if such aid could not be

obtained, was with the idea of creating a civic center at a designated place within the city; that the ballot used in the election was misleading and dual in its terms in particulars which were stated; that the city had on file with its clerk no itemized statement of the cost of purchasing a site and no estimate of the cost of erecting and equipping a public building as a basis for the issuance of temporary notes, but that the city is issuing temporary notes in a sum stated for a site for such building, which if continued would deplete the funds arising from the sale of the $850,000 bonds, so that the city would not be able to erect and equip the building with the balance of the funds; that on February 16, 1938, the city passed a resolution by which it selected a location for the public building on the south end of the block bounded by Seventh and Eighth avenues east and Monroe and Quincy streets, and adopted preliminary plans; that on the northwest portion of this block is located the city office building, and this space would not be available as a building site for the public building contemplated; that the block is 450 feet long and 320 feet wide, and if the proposed building faces south it would occupy land not to exceed 200 feet north of the south line thereof; that the city commissioners are "proceeding to purchase the north end of said block for the site of a second building for use as city offices to be erected sometime in the future and are about to pay for the site of said second building with the proceeds from the sale of said bond issue," and are thus diverting the fund from the purpose for which it was voted. The lots which it was alleged the city is about to purchase are described, and it was alleged that unless the city be restrained from purchasing them there will not be enough money to build and equip the public building; and it was further alleged that the bond election of April 6, 1937, is void because the ballot contained two or more separate propositions, which were voted on together instead of separately, as provided by law.

In its answer the city admitted the resolution of March 8, 1937, and other steps pleaded in the petition pertaining to the bond election; that it had made application for federal funds; that it intended to purchase all the property not already owned by it in the block bounded by Seventh and Eighth avenues east and by Quincy and Monroe streets; that it had already purchased some of the property and had issued its temporary notes therefor, but specifically denied that such notes had not been issued in accordance with law. It denied other allegations of the petition and specifically denied that

the burdens of plaintiff as a taxpayer would be unnecessarily increased by any of the acts complained of, and denied that the bond election was void, as alleged by plaintiff. In an amended answer it alleged plaintiff has been guilty of laches, and that by his conduct in connection with the matters pertaining to the bond election he is estopped from maintaining the present action.

The evidence on plaintiff's behalf tended to show that on August 30, 1935, the city applied to the PWA for aid to construct a municipal auditorium at a total estimated cost of $850,000, the city to furnish $467,500 of the amount and PWA to aid by grant of $382,500; that this application was not acted upon and was withdrawn by the city on November 15, 1935. After the election, April 6, 1937, at which there was a favorable vote on the bond issue, and on June 7, 1937, the city by resolution authorized its clerk to execute and file on behalf of the city an application to the federal government for a grant to and in financing the construction of a public building, and at the time of the trial of this case federal funds having been made available, the application was taken up and favorably considered, and at the hearing in this court we were advised federal aid had been granted in the sum mentioned in the resolution and ballot at the election for bonds April 6, 1937. The trial court did not find bad faith on the part of the city in respect to its application for federal aid. Indeed, the evidence would not have sustained such a finding. The first application in August, 1935, was made before the city had been authorized by a vote of the people to issue bonds to pay its share of the cost of the project, and it was prudently withdrawn. After the election and in June, 1937, the city made a second application for federal aid. The form of this application is not before us, but obviously it was in the form contemplated by the resolution for, and the ballot used at, the election of April 6, 1937, for this was the grant we are advised was made as soon as the federal funds were available for that purpose.

Other evidence offered by plaintiff went to the question of the area of the site which was being purchased by the city for the public building. It had been alleged in the petition and admitted in the answer that the city was proceeding to purchase all of the lots not previously owned by it in the block bounded by Seventh and Eighth avenues east and Quincy and Monroe streets. The evidence disclosed the city owned the northwest portion of this block, on which city office buildings are now situated. Plaintiff's contention was

that the new building authorized by the vote of April 6, 1937, can be located on the south half of the block; that the city does not need the lots in the northeast portion of the block; that the city really is purchasing them for use to locate new city office buildings at some time in the future, and that to purchase them with proceeds of the bonds authorized at the election of April 6, 1937, is a wrongful diversion of that fund. The evidence on this point consisted of such surveys of the area and building plans as had been prepared by the city, all of which were quite tentative. There was no evidence that two buildings were to be constructed. Plaintiff did not charge the city with bad faith in its determination of the area of the site to be purchased. The only thing really established by the evidence on this point was that a difference of opinion existed between plaintiff and the city as to the area of the site necessary or appropriate for the public building authorized by the election of April 6, 1937. On that point the trial court held the area of the site was a matter within the discretion of the city, and in the absence of a charge and showing of bad faith on its part of a character to give jurisdiction to a court of equity the court could not interfere. We concur in this view. More than that, plaintiff brought this suit as a taxpayer and is entitled to complain only of wrongful or illegal matters which affect his pocketbook by unlawfully increasing his taxes. (*Warner v. City of Independence,* 121 Kan. 551, 557, 247 Pac. 871; *Home Riverside Coal Mines Co. v. McAuliffe,* 126 Kan. 347, 267 Pac. 996.) His only claim on this point is that too large a portion of the $850,000 bond issue authorized is being consumed in procuring a site. He does not contend that the amount he would have to pay in taxes to retire the bonds will be increased because more of the proceeds of the bonds is expended for a site than he thinks is necessary. So, on this point, plaintiff's petition never did state a cause of action. The trial court correctly sustained the city's demurrer to this evidence.

In respect to the court's ruling on the demurrer to the evidence, appellee argues appellant is not entitled to be heard because the appeal was taken more than two months after the demurrer to the evidence was sustained. (Laws 1937, ch. 268, § 2; G. S. 1937 Supp. 60-3309.) The point is not well taken. The appeal here is from the final judgment against plaintiff. When an appeal is taken in time from the final judgment of the district court the fact that some ruling of which appellant complains was made more than two

months prior to the time he perfected his appeal does not prevent a review of the ruling. (Laws 1937, ch. 268, § 5; G. S. 1937 Supp. 60-3314a.)

In his brief in this court appellant contends the election of April 6, 1937, was irregular and void because of the form of ballot prepared by the city and used at the election. With respect to this, appellee argues that the appeal should be dismissed, or the judgment of the trial court affirmed, for lack of equity, and argues that appellant has been guilty of laches and of conduct in opposition to his present contention on these points, which barred or precluded him from maintaining this action. The facts on which this argument is based, shown by the record or stated in the argument and not controverted, may be summarized as follows: Appellant is and for many years has been actively engaged in the practice of law in Topeka. He lives about two blocks from the site of the proposed building. He has taken an active interest in this building project from the beginning and is familiar with all of the official and most of the unofficial acts connected with it. He opposed the bond issue and voted against it. After the bonds carried he took an active interest in the site to be selected for the building, a question in which many persons took an interest, many sites being proposed. He appeared before the city commissioners in a well-prepared and exhaustive argument and urged the selection of the site which eventually was chosen. He conferred repeatedly with the city as to the plans for the building, the materials which should be used in it, its size, and its exact location on the site, and the area of the site. The city had the site appraised and was buying, or taking options to buy, lots therein, and employed an architect. It was not until the city failed to agree with him on the area of the site, and possibly some other details of construction of the building, that he went into court and brought a suit in his own name to enjoin the city from proceeding, and obtained a temporary restraining order. Perhaps to keep from having to give an injunction bond he dismissed that action and brought the present suit in slightly different form, but asked for no restraining order or temporary injunction. When this case was tried in the court below the city had expended in architect's fees and other preliminary expenses and in purchase of property for the site more than $100,000, and had outstanding option contracts on other property calling for additional payments. By the time of the hearing in this court the payments made aggregated $177,000. The funds to make them had

been obtained on temporary notes to be redeemed by the sale of the bonds authorized by the election of April 6, 1937. Plaintiff knew of these various steps, perhaps recommended—certainly acquiesced in—many of them. We think appellee's point is well taken. If the ballot used in the election was so defective as to invalidate the election, plaintiff knew that, or is presumed to have known it at the time. From his conduct it is clear he was willing to waive any defects in the ballot so long as the city followed his advice as to the location of the building and other details of the project. It was only when the city differed with him on some of those points, and after knowing the city had made large expenditures, which could be done only if there was a valid election on the bonds, that plaintiff raised these points, and this was done in a suit in which primarily he seeks to enjoin the city from buying a portion only of the site. The very statement of these facts discloses how inequitable it would be to permit plaintiff to maintain this action on these points. Our statute (G. S. 1935, 60-1121), by virtue of which plaintiff brought this action, requires promptness in the disposition of a case of this character, and our decisions require one who seeks equitable relief in such a case to act promptly. (See *Commissioners of Morris Co. v. Hinchman*, 31 Kan. 729, 3 Pac. 504; *Ritchie v. Mulvane*, 39 Kan. 241, 17 Pac. 830; *Stewart v. Comm'rs of Wyandotte Co.*, 45 Kan. 708, 26 Pac. 683; *Meistrell v. Ellis County*, 76 Kan. 319, 91 Pac. 65; *Kirsch v. City of Abilene*, 120 Kan. 749, 244 Pac. 1054.) Defendant raised this question by the amendment to its answer. The record on this point fully justified a general judgment for defendant. Even in his argument in this court appellant stated he did not want to prevent the construction of the building, or the carrying out of the project if he could be assured the city planned to construct but one building—and with respect to this the record does not disclose the city planned at any time to construct more than one building—and to conform to some other of his ideas about the building. In doing this he waived questions respecting the sufficiency of the ballot, and the court would be justified in dismissing his appeal with respect to this point.

However, the questions raised by plaintiff respecting the sufficiency of the ballot were considered by the trial court and decided adversely to plaintiff's contention. Perhaps plaintiff's principal purpose in raising them was to have them judicially determined. He argues them in his brief in this court, and we deem it best to consider them. Omitting formal parts, the ballot reads as follows:

"Shall the following be adopted?

"Shall the City of Topeka issue its negotiable bonds in an amount not to exceed $850,000 for the purpose of purchasing a site or erecting and equipping a public building for such city, or both, said bonds to be used for the purpose of paying the city's share of the cost of a total project estimated at $1,545,454 in the event such public building project is approved by the Public Works Administration, or some similar federal agency, and a grant of funds is obtained from the federal government through such federal agency, which grant shall be used to aid the City of Topeka in paying the cost of said project; and in the event such public building project is not approved by the Public Works Administration or some similar federal agency, and no federal grant of funds be obtained, then to pay the total cost to the city for the purchase of a site or the erection and equipment of a public building for said city, or both, at an estimated cost of $850,000?"

It is argued that the use of the phrase "a public building" in the ballot instead of the specific term "a municipal auditorium" is a grant of unlimited power to the city and violates article 11, section 5 of our constitution, and our statute, G. S. 1935, 10-117. It is a sufficient answer to this contention to say that in this respect the ballot used the exact phrase which the legislature used in the statute under which the city proceeded. (G. S. 1935, 13-1431, as amended by Laws 1937, ch. 138, § 1; G. S. 1937 Supp. 13-1431.) The city could have found no sanction for the use of the suggested term "municipal auditorium" in any statute applicable to the city. Just why the phrase "a public building for such city" was used by the legislature instead of some other phrase or term we need not stop to inquire, since no one contends the legislature lacked authority to use that phrase, or that the statute is void for that reason. The city had used the word "auditorium" in its initial resolution, but when it prepared the ballot it used the phrase found in the statute. This was legally accurate. Section 5 of article 11 of the constitution and G. S. 1935, 10-117, prohibit the use of funds raised by taxation for a purpose other than that for which they were raised. There is nothing in the ballot to indicate that the proceeds of the bonds voted are to be used for any purpose other than that stated in the ballot; hence, the ballot cannot be irregular or void as being in violation of these sections.

It next is argued that the provisions of the ballot to the effect that the building project is to be completed at an estimated cost of $1,545,454 in the event federal aid is obtained, but if not the total cost should not exceed the amount of the bonds, $850,000, issued by the city, presents a dual question and invalidates the ballot. We

think this contention is not tenable. It is quite clear from the wording of the language that in the event of a favorable vote the project was to be completed in any event, the total cost not to exceed the amount of the city's bonds if federal aid were not obtained, but if such aid were secured a larger or better building would be constructed, the total cost to the city in any event not to exceed the amount of its bonds voted for that purpose. Voters could not be misled on this point. In fact, the ballot gave them definite information respecting the total expenditure for the project, depending on the contingency of receiving federal aid. Nothing was concealed from the voters respecting that matter. In this respect the ballot is not open to the objection found to exist in the ballots in *Kansas Electric Power Co. v. City of Eureka,* 142 Kan. 117, 45 P. 2d 877, and *Board of Education v. Powers,* 142 Kan. 664, 51 P. 2d 421.

It next is contended the ballot is indefinite and dual in its terms in that it is so worded that the city might use proceeds of the entire bond issue, or of the bond issue and the federal grant, in the purchase of the site for the building, or all of it might be used in constructing and equipping the building, or that some indefinite part of these sums might be used for the purchase of the site and the remainder for constructing and equipping the building. We think the ballot might have been worded more clearly in this respect. For example, the language used at one place in the initial resolution, "that . . . said building be constructed and equipped and a site purchased, if one deemed necessary, . . ." would have expressed more accurately the thought sought to be conveyed. The terms "total project" and "such project" used in the ballot, and the amount involved, as shown by it, indicate quite clearly that but one project was submitted, namely, the construction and equipping of a public building for the use of the city, which project might require the procuring of a site, depending on where the building was to be located.

(*Thomas v. Covell,* 119 Kan. 684, 240 Pac. 574; *Pittsburg Board of Education v. Davis,* 120 Kan. 768, 245 Pac. 112; *State, ex rel., v. McCombs,* 129 Kan. 834, 284 Pac. 618; *Robertson v. Kansas City,* 143 Kan. 726, 56 P. 2d 1032; *Kansas Power Co. v. City of Washington,* 145 Kan. 962, 67 P. 2d 1095.)

It has been repeatedly held that a proposition to acquire a site and construct a building is not a dual proposition (*Thomas v. Covell,* supra; *Pittsburg Board of Education v. Davis,* supra), for, from the very nature of things, a building requires a site, and the

site alone would be inadequate for the completion of the project. There is no reasonable basis for saying that anyone reading this ballot would understand all of this money would be used for a site for the building. Neither is it contended that plaintiff, or any other voter at that election, was misled by the form of the ballot in this respect. This is the type of question that might have been given more weight if raised at the time of the election or immediately thereafter. (*Board of Education v. Powers,* 142 Kan. 664, 668, 51 P. 2d 421.) It should not be permitted to have any weight at this time when rights of third parties have intervened (*State, ex rel., v. McCombs,* 129 Kan. 834, 284 Pac. 618) and financial obligations have been incurred. At most it is an irregularity insufficient in and of itself to vitiate the ballot.

Appellant cites and relies largely on the cases of *Leavenworth v. Wilson,* 69 Kan. 74, 76 Pac. 400, and *Kansas Utilities Co. v. City of Paola,* 148 Kan. 267, 80 P. 2d 1084. We do not care to detract from the holding in either of these cases. While they differ somewhat, the principal purpose of the city in each case was to establish a municipal utility where there was an existing privately owned utility of the same character. Naturally, the properties of the privately owned utility would be affected by the result of the election; hence, whether the vote should authorize the city to purchase the existing utility, or to build and construct a new one, presented distinct questions important to the owners of the existing utility as well as to the electors of the city. We have no such question here, hence the decisions are not in point.

We find no error in the record. The judgment of the court below is affirmed.

HUTCHISON, J., not participating.