No. 35,942

Rosa B. Arnall, *Appellee,* v. Union Central Life Insurance Company, *Appellant.*

(142 P. 2d 838)

Opinion filed November 6, 1943.

*W. A. Kahrs,* of Wichita, argued the cause, and *Austin M. Cowan, C. A. McCorkle, Robert H. Nelson* and *Henry L. Butler,* all of Wichita, were on the briefs for the appellant.

*Allen B. Burch,* of Wichita, argued the cause, and *L. J. Bond,* of El Dorado, and *Arnold C. Todd,* of Wichita, were on the briefs for the appellee.

The opinion of the court was delivered by

THIELE, J.: This was an action on a policy of life insurance and from an adverse judgment the defendant appeals.

The gist of the petition was that on August 22, 1933, the defendant company issued to Lloyd T. Arnall its policy of insurance on his life; that on May 29, 1934, Arnall left his home with the intention of going to his farm and he failed to return; that search was made to learn what had befallen him, but no one known to plaintiff had been able to obtain any information as to where he might be found; that plaintiff was the designated beneficiary under the policy of insurance and shortly after the disappearance of Arnall she notified the local agent of the defendant company, and she was later advised the defendant would not pay the policy unless it was convinced the assured was dead. About September 10, 1935, plaintiff offered to pay the premium which became due and payable

October 23, 1934, but defendant advised her that it would not permit payment unless evidence was furnished of the insurability of the assured satisfactory to the defendant and defendant thereby waived further tender of premiums. Plaintiff further alleged that by reason of the foregoing facts and circumstances, assured died while the policy of insurance was in full force and she was entitled to recover its full face value, for which she prayed.

Defendant's answer, for our purposes, may be said to have consisted of certain admissions as to the issuance of the policy and the attempt in September, 1935, to pay the premium due October 23, 1934, and denials of the other matters pleaded, including a specific denial that Arnall was dead, and alleging that if Arnall was dead his death occurred after the policy of insurance lapsed for nonpayment of premium. Defendant further alleged the action was barred by the statute of limitations.

A jury was waived and trial was had by the court. Defendant's demurrer to plaintiff's evidence was overruled and defendant introduced its evidence. The parties having requested the trial court to make findings of fact and conclusions of law, the trial court later advised counsel for both parties of its proposed findings and conclusions, and the defendant filed its motion to strike certain findings and to include other findings and conclusions. Later, and on March 26, 1943, the trial court caused its proposed findings and conclusions to be filed and denied the defendant's motion. Thereafter and on April 8, 1943, the trial court found that judgment should be entered pursuant to its findings and conclusions and rendered judgment accordingly. No motion for a new trial was filed, but on April 16, 1943, defendant perfected its appeal to the supreme court from the rulings of March 26, 1943, and from the judgment of April 8, 1943. We note here that the findings of fact are based on all of the evidence and the conclusions of law are based on those findings. In view of questions hereafter considered it is not necessary that we set out the findings of fact nor the conclusions of law.

In its brief the appellant contends there was no evidence that Arnall died prior to October 23, 1934, which was the date of expiration of the policy of insurance on his life, or if there was such proof that the action was barred by the statute of limitations and the laches of plaintiff, and further no presumption of death arises from seven years' absence unless it be shown that diligent inquiry through all sources and to all persons and places, where the person disap-

pearing is likely to be found, has been made, and nothing learned therefrom and that there was no proof that such inquiry had been made.

Appellee challenges the right of the appellant to be heard on the questions as presented by it, and after directing our attention to the fact that appellant had filed no motion for a new trial, argues that the only question now reviewable is whether the judgment, as a matter of law, is justified under the findings of fact and conclusions of law made by the trial court. We do not think it necessary to review the many decisions to which our attention has been directed and having to do with the necessity of a motion for a new trial as a condition precedent to a full review on appeal. It has been repeatedly held that in the absence of a motion for a new trial there can be no reëxamination of issues of fact. On a number of occasions it has been held that where the trial court had made findings of fact and conclusions of law thereon which either included or indicated a judgment, the same were not subject to review on appeal unless there had been a motion for a new trial, lacking which the only question left was the sufficiency of the findings and conclusions to support the judgment. See, *inter alia, Brubaker v. Brubaker,* 74 Kan. 220, 80 Pac. 455; *Union Nat'l Bank v. Fruits,* 124 Kan. 440, 260 Pac. 638; *Kalivoda v. Kalivoda,* 148 Kan. 238, 80 P. 2d 1050, and the cases cited therein. We need not review certain cases called to our attention involving whether or not a motion not specifically denominated as a motion for a new trial, was so framed that it might be construed as such. Although it is not clearly spelled out in all the cases mentioned above, the theory is that although questions of fact may not be reëxamined or reviewed, the question whether the findings of fact and conclusions of law support the judgment presents a question of law and is open to review.

Prior to 1937 appeals from judgments and other appealable decisions and orders generally had to be taken within six months. By Laws 1937, ch. 268, § 2, appearing as G. S. 1941 Supp. 60-3309, that time was shortened to two months. By section 5 of the same act, appearing as G. S. 1941 Supp. 60-3314a, it was provided that when a party appeals, after final judgment, the fact that some ruling of which he complains was made more than two months before, should not prevent a review of the ruling. Not long after the statute became effective this court had occasion to apply it in *Drenning v. City of Topeka,* 148 Kan. 366, 81 P. 2d 720, it being said there:

"In respect to the court's ruling on the demurrer to the evidence, appellee argues appellant is not entitled to be heard because the appeal was taken more than two months after the demurrer to the evidence was sustained. (Laws 1937, ch. 268, § 2; G. S. 1937 Supp. 60-3309.) The point is not well taken. The appeal here is from the final judgment against plaintiff. When an appeal is taken in time from the final judgment of the district court the fact that some ruling of which appellant complains was made more than two months prior to the time he perfected his appeal does not prevent a review of the ruling. (Laws 1937, ch. 268, § 5; G. S. 1937 Supp. 60-3314a.)" (l. c. 370.)

Of course, if an appeal is not taken in time from the final judgment the statute mentioned is ineffective to permit review of prior rulings. That was the situation in *In re Estate of Badger*, 156 Kan. 734, 137 P. 2d 198, where an attempt was made to procure a ruling on a demurrer to the evidence where there had been no timely appeal from the judgment. But there it was said:

"G. S. 1941 Supp. 60-3314a provides that when a party appeals from a final judgment against him the fact that some ruling of which he complains was made more than two months after he perfected the appeal shall not prevent a review of the ruling. If there was an appeal in time from the judgment then the above statute would permit us to examine the ruling of the court on the demurrer to the evidence. See *First Federal Savings & Loan Ass'n v. Thurston*, 148 Kan. 88, 80 P. 2d 7, and *Drenning v. City of Topeka*, 148 Kan. 366, 81 P. 2d 220. This sends us to a further examination of the record." (l. c. 738.)

Without expressing any opinion as to other changes that may have been effected by the enactment of the statute last mentioned, we think that where the ruling sought to be reviewed is one of law, it is open to review whenever a timely appeal is taken from a final judgment. And so we proceed to examine the printed record to determine whether the trial court erred in ruling on defendant's demurrer to plaintiff's evidence.

Preliminary to a recital of any of plaintiff's evidence, it may be noted that this appeal involves questions arising from unexplained absence for a period of seven years and the presumptions that may be involved, depending on the facts. In the case before us there is no contention concerning the absence of the assured, but it is contended the evidence fails to disclose that any diligent search was made to discover his whereabouts, and that there is no evidence the insured died before his policy of insurance lapsed.

Except to state matters necessary to a complete understanding, our review of the evidence is limited to that bearing on the questions above indicated, but in making that review we bear in mind the rule that plaintiff is entitled to the benefit of the evidence, and

inferences reasonably to be deduced therefrom, most favorable to her, and without regard to any contradictions there may have been between witnesses or between direct and cross-examination of any witness.

It may be stated that it is admitted by the pleadings that on August 22, 1933, Lloyd T. Arnall procured from the defendant company a policy of insurance on his own life in which the beneficiary named was his wife, Rosa B. Arnall, who is the plaintiff. Under the policy the payment of the second premium was due October 23, 1934. The policy provided that failure to pay any of the first three years' premiums should avoid and nullify the contract, but it also provided a grace period of thirty-one days for payment of premiums and for reinstatement within three years after default upon evidence of insurability satisfactory to the company. As is shown in more detail later, Arnall disappeared on or about May 29, 1934. Prior to the due date of the second premium, notice was sent to Arnall by the insurance company, but the premium was not paid. In September, 1935, the plaintiff offered to pay the second premium which became due in October, 1934, but the insurance company would not accept it without evidence of insurability, and that was never furnished nor the second premium paid. There was no further evidence to show the insurance company waived payment of either the second or any succeeding payment of the premiums. This latter matter is mentioned in view of plaintiff's allegations that the insurance company had waived the payment of premiums. The evidence was not sufficient to warrant any such conclusion, and plaintiff must fail unless the evidence offered in her behalf proved that her husband died on or before October 23, 1934, or in view of the grace period, on or before November 24, 1934.

With respect to the evidence as to Arnall's disappearance and that he died while the policy of insurance was in force, we do not think it necessary to separately detail the evidence of the various witnesses. The substance of the testimony of all the witnesses discloses the following:

Lloyd T. Arnall and his family consisting of his wife and four children, lived in El Dorado. His mother and two brothers also lived there. Although living in town, Arnall was engaged in farming a rented place east of El Dorado. Early on the morning of May 29, 1934, he had his breakfast at home. His wife packed a lunch for him and asked him to stop at a grocery store and buy

some fruit for his lunch. He had stated he wanted to start early, that his car had no lights and he didn't want to drive home in the dark. He did stop and buy the fruit. That evening he did not return as expected and later the police were notified. A search that night failed to disclose his whereabouts or his car. The next day his car was found on a street off the usual route he would have taken. It is not clear from the evidence as abstracted that the particular street was searched the night before and that the car was not then at the place where it was later found. His lunch was in the car when found. A search was made at the farm and the condition of the work animals indicated they had not been used. Search was also made about the farm and there was nothing to indicate he had been there. Rumors that he had been seen at various places were investigated and found to be groundless. A relative of a married daughter wrote that he had been seen near Joplin, Mo., and a short time later wrote that it was a mistake. This particular matter was not investigated further. Without further recital, it may be said that within a few months after May, 1934, the search was reasonably diligent, but that there was little or no evidence of search thereafter except that one son testified he finished high school in 1935 and then worked for a tank company and was in Kansas City and in the states of Wyoming, Texas and Oklahoma, and that he made a point of looking at everybody, thinking that if his father was still alive he might run into him, but that he never did.

The evidence showed that Arnall was born in 1888, and therefore he was about forty-six years of age when he disappeared; that he had not been sick and that he was in good health on the day he disappeared. The copy of the application for insurance attached to the policy shows that on August 19, 1933, Arnall had in the ten years preceding consulted a doctor but once and that was in 1925 for a fractured bone in his left forearm, and that he had never suffered from any of the many diseases there listed. It was also shown that Arnall was on good terms with his immediate family and there had been no marital discord; that he expected to take his children swimming the evening of the day he disappeared; that he was also on good terms with his mother and a brother who lived in El Dorado. There was evidence he was congenial and not the type to commit suicide. A few days before he disappeared he had been to see his mother to make arrangements for her to go to a cemetery at Chelsea where members of her family were buried.

With reference to his financial situation, his wife first testified she knew of no indebtedness he had when he left home, but later she testified he was indebted to an El Dorado bank on a note of $375 secured by a chattel mortgage, but he had never told her the bank was pressing him for payment, and he was also indebted on another note of $1,430 which was endorsed by his mother, and that he had another note but for how much she did not remember; that her husband was not wealthy but worked hard and tried to keep his bills paid, and if the obligations worried him she didn't know about it. After the disappearance a brother talked to the banker and was told that bank didn't want Arnall. The evidence as to the extent of Arnall's property is scant. Apparently he did not have much. His brother referred to him as "one of us poor farmer boys."

The following also should be noted. A brother of Arnall stated he knew of no trouble Lloyd Arnall had with anyone prior to his disappearance; that there were rumors of threats made against him; that he had a son-in-law who caused him considerable worry. Mrs. Arnall was recalled and testified that her daughter's husband named Warren was the person referred to; that he was in the penitentiary and her husband had said he was going to see that Warren didn't get out; that before Arnall disappeared some person who had been in the penitentiary came to the home to see the daughter, to tell her that her husband wanted him to see how she was and for her to remember why he didn't get his parole. Warren was paroled in 1937 or 1938. He was in the penitentiary when Arnall disappeared.

Although under our own decisions and under the authorities generally, there may be grave doubt that the evidence discloses sufficient diligence to discover the whereabouts of Arnall after his disappearance, we have concluded not to place our decision on that ground and therefore do not further discuss it.

That leaves as the decisive question whether the evidence and the inferences that may be drawn therefrom, warrant a conclusion the insured died on or before November 24, 1934, the expiration of the period of grace for the payment of the second premium under the policy of insurance.

In considering that question it will be assumed without exposition that unexplained absence of a person for a period of seven years creates a presumption of his death, and that it is a question of fact whether his death occurred on or before a particular date, and that the burden of proof is on him who asserts that death has so occurred,

and may be sustained by direct or circumstantial evidence. (*Modern Woodmen v. Gerdom*, 77 Kan. 401, 94 Pac. 788; *United States v. Hayman*, 62 F. 2d 118; 29 Am. Jur. 1088; 6 Cooley's Briefs on Insurance [2d ed.] p. 5170.) At the outset we may eliminate all of those cases dealing with the disappearance of persons known to have been exposed to specific or extraordinary perils, or those in a desperate state of health, or fugitives, as the present case is not of any of those types.

In support of the trial court's ruling appellee directs our attention to the A. L. R. annotations later mentioned, and specifically to cases later mentioned. In 34 A. L. R. 1389, 1390, it is stated that an inference of death prior to the expiration of the seven-year period is permissible even in the absence of evidence showing exposure to specific peril, where, taking into consideration the circumstances relating to the character, habits, conditions, affections, attachment, prosperity and objects in life of the absentee, which usually control the conduct of men, no reasonable explanation could be given for his absence, and a number of decisions in support are noted. This annotation states that the leading case on the subject is *Tisdale v. Connecticut Mutual Life Ins. Co.*, 26 Ia. 170, 96 Am. Dec. 136, and decided in 1868. See the supplementary annotation in 61 A. L. R. 1327, 1329, for further cases. In 75 A. L. R. 630 may be found an annotation on the presumption of death in relation to the time of death as affecting failure to pay premiums of insurance during the seven-year period. For present purposes it may be said this annotation states that if the evidence is disputed, or if not disputed, relevant inferences may reasonably be drawn, the question of the fact of death, as well as the time of death is for the jury (l. c. 635), but whether the evidence is sufficient to raise the presumption or warrant a finding of death during the period is for the court to determine (l. c. 637). In support of both propositions many cases are cited including *Mackie v. United Workman*, 100 Kan. 345, 164 Pac. 263.

In the leading case of *Tisdale v. Connecticut Mutual Life Ins. Co.*, supra, it appeared that the insured had gone to Chicago on business and disappeared in September, 1866. The evidence showed that the insured was a young man of exemplary habits, excellent character, fair business prospects, respectably connected and of happy domestic relations. He owed no debts of any considerable sum and had made payment of some small ones about the day of his disappear-

ance. His valise was found at his hotel and his bill there was not paid. The trial court had instructed the jury that death in less than seven years could not be presumed except on evidence of facts showing exposure to danger which probably resulted in his death, and that evidence of long absence without communicating with his friends, making abandonment of home and family improbable, and of want of all motive or cause for such abandonment which can be supposed to influence men to such acts, was not sufficient to raise a presumption of death. Judgment being against the beneficiary under an insurance policy, she appealed, the question decided being the correctness of the instruction. In holding the instruction erroneous, the court commented on the evidence, and held:

"The death of an absent person may be presumed in less than seven years from the date of the last intelligence from him, from facts and circumstances other than those showing his exposure to danger which probably resulted in his death.

"Evidence of character, habits, domestic relations, and the like, making the abandonment of home and family improbable, *and showing a want of all those motives which can be supposed to influence men to such acts,* may be sufficient to raise the presumption of death, or from which the death of one absent and unheard from, may be inferred, without regard to the duration of such absence." (Syl. ¶¶ 1, 2.) (Emphasis supplied.)

Appellee directs our attention to *Gaylor v. Atlas Life Ins. Co.*, 185 Okla. 163, 90 P. 2d 661, decided in 1939. An examination of that opinion shows that the insured disappeared May 7, 1929. He had three policies of insurance, expiring respectively in July, August and September, 1929. The trial court had sustained a demurrer and on appeal the supreme court reversed. The opinion states it is unnecessary to review the evidence, but that it is abundant to bring the case within the rule of the leading case of *Tisdale v. Connecticut Mut. Life Ins. Co.*, supra. The substance of that rule is stated in the second paragraph of the syllabus of the *Gaylor* case, and reads:

"Whether the death of an insured absentee occurred before the expiration of the seven-year period, giving rise to the presumption of death, and within the life of the policy upon his life, is a question for the jury, to be determined from all the facts and circumstances, if there be evidence of facts and circumstances relating to the character, habits, conditions of life, affections and attachments, etc., which usually control the conduct of men *and there is an absence of evidence of any of those motives which ordinarily impel the voluntary abandonment of home,* family, business, associates, etc." (Syl. ¶ 2.) (Emphasis supplied.)

Appellee also directs our attention to *Gero v. John Hancock L. Ins. Co.*, 111 Vt. 462, 18 A. 2d 154, decided in 1941. The opinion contains a long statement of the facts from which it appears that the insured was a purser on a steamer making a trip across Lake Champlain. On July 15, 1938, he had been paid and had cashed his check and given the proceeds to his wife with whom he was on good terms. He was in good spirits. On the afternoon of that day he started on a trip and was then in good spirits. During the evening he returned to the mate a pay check he had been carrying for him, and he was about the steamer until late. At eight o'clock the next morning he could not be found. His door was locked, his keys were on his desk and his bed had not been slept in. There was some evidence he might have locked himself out of his room and attempted to pass along a narrow projection so that he could enter through a window which faced outward toward the water. His body was not found. The rule of the Tisdale case was applied, and it was held that the fact of his death and the time of it were questions for the jury.

Appellee further directs our attention to *Pacific Mut. Life Ins. Co. v. Meade*, 281 Ky. 36, 134 S. W. 2d 960, decided in 1939. The opinion discloses a long statement of facts. Briefly, it appears the evidence showed that the insured did, and did not, have a happy home situation and that his financial situation was good, and that it was poor. He was a grocery salesman, used a car and had collected a large amount of money which ordinarily he would have turned in on the next day. When he disappeared, he did not take his car. In applying the rule the court placed some emphasis on the latter, saying: .

"If he had been running away, he would have been apt to take his automobile and at least some of his clothing other than what he was wearing. This is significant." (l. c. 43.)

Appellee places weight on that, for Arnall did not take his car. The court continued thus: .

"He evidently had a large sum of money on his person. His practice in this respect made him peculiarly subject to attack. Exposure to specific peril is often of much probative value." (l. c. 43.)

In *Insurance Co. v. Marshall*, 84 Colo. 71, 268 Pac. 529, 61 A. L. R. 1321, decided in 1928, it appeared that the insured, who had a policy of insurance effective to June 18, 1925, disappeared on September 8, 1920, when on a trip to Denver for the avowed pur-

pose of attending a funeral. He did not attend the funeral, but a day or so later his truck was found and in it were articles he had purchased. His family situation was good, he was sober and industrious and of good habits. He had some mortgage indebtedness but was a hopeful and contented man. Again the Tisdale case is mentioned and relied on. It was held that presumption of death from unexplained absence arises at the expiration of the seven-year period, but not as to the time of death, which is to be proved by the facts and circumstances of each particular case. The sufficiency of the proof was upheld. It will be noted in that case there was a considerable period of time between the date of disappearance and the expiration of the policy of insurance.

In *Tyrrell v. Prudential Ins. Co.*, 109 Vt. 6, 192 A. 184, 115 A. L. R. 392, decided in 1937 and frequently cited, a rule quite like that in the Tisdale case was followed. We shall not detail the facts, but we do note the holding of the court that the presumption of death of the insured arising from seven years' unexplained absence is enough to shift the burden of evidence from one suing on the policy and to require the defendant to go forward with evidence tending to show that the insured is not dead. We may observe that if the latter part of the above rule obtained in this state it would not relieve the plaintiff from making a showing by direct or circumstantial evidence that the death occurred before the expiration of the policy of insurance under which recovery was sought. See *Mackie v. United Workmen*, 100 Kan. 345, 164 Pac. 263, and cases cited in 75 A. L. R. 630, 633.

In many cases it has been held that the evidence was insufficient to warrant its submission to the jury. In the annotation in 75 A. L. R. 630, 637, published in 1931, will be found a list of cases so holding, none of which we shall review here.

In *Browne v. New York Life Ins. Co.*, 57 F. 2d 62, decided 1932, the action was on an insurance policy expiring March 11, 1922. The insured who lived at Palco, Kan., disappeared on or about May 14, 1921. He had a wife and seven children. There is no specific showing as to his financial condition, but inferentially it appears his family life was happy. On May 15, 1921, the wife received a letter from her husband mailed at Salina in which he stated that he was going to Kansas City and he guessed it meant an operation on his head. Prior to his departure he had complained of his eyes. On May 16 the wife went to Kansas City and inquired at various hos-

pitals and invoked the aid of the police, but she found no trace of her husband and she then went to Salina where similar inquiries were made without result. She also notified various of his relatives, all without result as to disclosing her husband's whereabouts or what might have happened to him. Upon the trial the district court directed a verdict in favor of the defendant, and the wife, who was the plaintiff, appealed. Without detailing all of the reasoning of the court in affirming the trial court, we note the following statement:

"Death might be proven by circumstantial evidence, as any other fact, but the party alleging death before the expiration of seven years must prove such facts and circumstances connected with the absence of the person as, when submitted to the test of reason and experience, would warrant a reasonable conclusion of death within a shorter period." (l. c. 64.)

And stated further that the facts and circumstances of the case fell far short of that proof which would lead unprejudiced minds to conclude that the insured died on May 15, 1921, or at any other particular time during the life of the policy, and that a jury could not, except by guess and surmise, have determined that the insured's death occurred during the life of the policy.

In *Claywell v. Inter-Southern Life Ins. Co.*, 70 F. 2d 569, decided in 1934, it appeared the insured disappeared in August, 1926 and the action was on policies expiring in June, 1927. The insured had some financial and personal involvements, but there was evidence he had been happy and contented in his work. In that case, the court, after directing attention to the rule quoted in the Browne case, *supra*, stated that undisputed evidence, which taken as a whole leaves one uncertain as to whether the insured disappeared voluntarily or not, lacks the degree of probability required. It was further said:

"The classical case upon which appellants rely (*Tisdale v. Conn. Mutual Life Ins. Co.*, 26 Iowa 170, 96 Am. Dec. 136) in the summation of the evidence there submitted to the jury states not only the prosperous and happy state of the one disappearing, but also 'with no cause of discontent with his condition, which would have influenced him to break the domestic and social ties with which he was so pleasantly bound to life.' Later that opinion states: 'The reasons that the evidence above mentioned raises a presumption of death are obvious; absence from any other cause; being without motive and inconsistent with the very nature of the person, is improbable.'" (l. c. 571.)

It was further said:

"There is no way in which a determination as to time of death can be more than a guess on the part of the jury or anyone else. It is somewhat analogous

to the situation which sometimes arises in criminal cases when all of the evidence is as favorable to innocence as to guilt." (l. c. 572.)

In *Aetna Life Ins. Co. v. Strobel*, 202 Ark. 504, 150 S. W. 2d 965, decided in 1941, the action was upon an insurance policy and it was incumbent upon the plaintiff beneficiary to show death of the insured on or before midnight of January 29, 1938. The evidence disclosed that the insured left his home in Huntington, W. Va., early in the afternoon of January 28, 1938, in an automobile which about an hour later was placed in a garage in that town. On June 18, 1938, the insured's body was found in the St. Lawrence river. It was shown by the evidence that the insured could have gone from his home to a point near where his body was later found so that he would have reached there about 9:45 p. m. of January 29; that there were no marks of violence on the body; that the deceased had drowned, and that his body had been in the water for several months. The beneficiary who prevailed in the trial court contended that because no motive for disappearance was shown and that it was possible for him to have reached the point where his body was found, coupled with the medical testimony, was such that the jury could reasonably find he died before the policy lapsed. In reversing the trial court, the supreme court stated:

"The plaintiff offered no affirmative proof that Strobel's death occurred within the limited period; nor are the circumstances such as to give substance to an inference acceptable to reasonable minds.

"It is not sufficient to say the insured might have met death before midnight of the 29th. There must be some condition from which, in normal sequence, it may be presumed that death occurred on or before the stated time." (150 S. W. 2d, 966.)

In *Schneiderman v. Mutual Life Ins. Co.*, 290 N. Y. S. 388, 160 Misc. 680, will be found the opinion rendered on trial of the action in the city court of New York, to recover on a policy of insurance which did not finally lapse until March 2, 1926. The insured, a young man twenty-seven years of age and a printer by trade, left his residence on the morning of July 16, 1925, and never returned, nor did he thereafter communicate with his friends or relatives. It appeared that his relations with his family were good and that although he was temporarily out of employment he was not without funds. Extensive search was made for him and in January, 1933, an action was brought upon the policy, which was tried to the court without a jury. We need not repeat any part of the opinion of the trial justice which holds that as respects presumption of death aris-

ing from seven-years absence, each case must depend upon its own facts but that in his opinion the evidence raised the presumption that the insured died shortly after his disappearance. From that judgment an appeal was taken and in the case of the same title, reported in 3 N. Y. S. 2d 35, 166 Misc. 735, the appellate court in a *per curiam* opinion stated that as no sufficient evidence was offered by the plaintiff to establish the fact that the insured died prior to March 1, 1926, the date the policy. lapsed, the defendant's motion made in the trial court to dismiss the complaint should have been granted.

*Fink v. Prudential Insurance Co.,* 162 Ore. 37, 90 P. 2d 762, decided in 1939, and to which our attention is directed, contains a detailed statement of the evidence and an extended discussion of the law applicable. As the judgment of the trial court was reversed in the supreme court principally because of the failure of the plaintiff to show sufficient diligence in making inquiry to discover the whereabouts of the insured or what had happened to him, we shall not review the case further.

Many other cases have been cited in the briefs of appellant, but as has been noted in the cases cited, each case stands on its own facts and we discern no good purpose in reviewing other cases where it was held the evidence was not sufficient.

The review of the law applicable and of the plaintiff's evidence leads to the following observations and conclusions: Arnall's unexplained absence for a period of seven years warrants the inference that at the end of the period he was dead. To justify any presumption or inference that he died at an earlier date, here November 24, 1934, the last day of grace for payment of the second premium on the insurance policy, there must not only be evidence of his unexplained absence and of his character, habits, domestic relations and the like making abandonment of his home and family improbable, but there must be a showing of a want of those motives which may be supposed to have induced him to leave. Those facts, when shown, must be such that, when submitted to the test of reason and experience, they warrant a reasonable conclusion of death within the shorter period.

In the instant case, the evidence showed that Arnall had disappeared, and that search had been made to discover his whereabouts or what might have befallen him. We have previously stated we do not place our decision on any lack of diligence in that search.

The evidence also showed facts concerning Arnall's character, habits, domestic relations and the like, tending to show abandonment of his home and family improbable, but there is no showing of a want of motives which might have influenced him to voluntarily leave. On the contrary, it was shown that he was heavily indebted and it might reasonably be concluded he left on that account. We are not impressed with the appellee's suggestion that Arnall's disappearance may have been caused by his convict son-in-law. The most that was shown was that the son-in-law was in the penitentiary, that Arnall had said he was going to see he didn't get out, and he was not out when Arnall disappeared. In those cases where the rule of the Tisdale case has been applied, and the evidence held sufficient to warrant the presumption of death before the expiration of the period of seven years' unexplained absence, there has been either a showing of want of motive which ordinarily impelled voluntary abandonment of home and family, or there has been showing of facts, disclosing exposure to some peril.

Under the evidence in the case before us, the trier of the fact could not, except by surmise and conjecture, determine that Arnall's death occurred on the day he disappeared, on May 29, 1934, or on or before November 24, 1934, when his insurance finally expired, or on any other date short of the seven years' period of his unexplained absence. A person in good health, as he was, is presumed to live, not to die. Except for his disappearance there is no evidence he died on or about May 29, 1934, nor is there any evidence that he died on any date between then and November 24, 1934. To say that Arnall died on or before the latter date is to reach a conclusion not supported by the testimony, but resting only on guesswork. The presumption of death arising after seven years' unexplained absence has no retrospective application. As we view the evidence, it was sufficient only to warrant the presumption of death from seven years' unexplained absence, and not to warrant presumption of death at any earlier time, and the defendant's demurrer to it should have been sustained.

In view of the conclusion which we have reached, it is not necessary to mention other matters urged in the briefs. The judgment of the trial court is reversed and set aside, and the cause remanded with instructions to sustain defendant's demurrer to plaintiff's evidence.