No. 43,679

Earl Willmeth, Jack Byers and Joe E. Fobes, *Appellants*, v. Neal C. Harris, V. E. Tullar and Ray Dietz, County Commissioners in and for Jewell County, Kansas, *Appellees*.

(392 P. 2d 101)

Opinion filed May 9, 1964.

*Tweed W. Ross*, of Beloit, argued the cause and was on the briefs for the appellants.

*Robert H. Meyer*, County Attorney of Jewell County, argued the cause, and *John S. Dean* and *B. L. Pringle*, both of Topeka, *Geo. E. Teeple*, *L. E. Weltmer*, *L. M. Weltmer*, and *Roderick E. Weltmer*, all of Mankato, were with him on the briefs for the appellees.

The opinion of the court was delivered by

Hatcher, C.: This appeal stems from an action to enjoin a tax levy and a bond issue for the purchase of a site and the erection of a long-term care and convalescent county hospital thereon. The plaintiffs challenge the validity of the notice of the election, the validity of the ballot used in the election and the validity of the declared results of the election. They also challenge the validity of the purpose of the election and the purpose for which the bonds were to be used.

The questions for consideration in this appeal involve only facts

pertaining to procedural matters. The pertinent facts are not in dispute.

On November 6, 1962, the Board of County Commissioners of Jewell County, Kansas called a special election on the question of a two mill levy for the purchase of a site, or sites, and the erection of a long-term care and convalescent county hospital thereon, in the city of Mankato, Jewell County, Kansas. The election was called pursuant to G. S. 1961 Supp., 19-1801.

According to the official election canvass, the proposition for the levy resulted in 1689 votes for and 1687 votes against.

On December 3, 1962, the plaintiffs filed their petition in this action. The petition will be summarized. It first alleged the status and qualifications of the plaintiffs to bring the action, and that the defendants advertised for bids and had offered to sell on December 4, 1962, and if not restrained would sell, bonds and credits of Jewell County, Kansas.

The petition challenged the validity of the action of the defendants on numerous grounds. It contended that G. S. 1961 Supp., 19-1801, *et seq.*, was not authority for the county to construct a long-term care and convalescent county hospital; that the petition for the election was equivocable, ambiguous and misleading as well as illegal as to form and content; that the ballots, a copy of which was attached to the petition, were equivocable, ambiguous and misleading as to the purpose for which the tax was to be levied and was contrary to and in conflict with the provisions of the statute above mentioned; that the statement in the ballot concerning the possibility of money in any amount being furnished by a federal agency was unnecessary, improper, illegal and misleading, and that there were only a majority of two votes cast in favor of the tax levy and that eight persons, who were named, illegally cast votes in favor of the tax levy and their vote was sufficient to change the result of the election.

On December 19, 1962, the defendants demurred to the petition stating as their grounds for the demurrer that there was a misjoinder of cause of action and "for the further reason that said petition does not state facts sufficient to constitute a cause of action against the defendants and in favor of the plaintiffs."

The bizarre proceedings which followed should next receive our attention.

On January 3, 1963, a pretrial conference was held on the

demurrer. At the conference a stipulation was entered into by counsel for the parties. We quote from the supplemental counter abstract of the appellees:

"MR. Ross: The plaintiffs stipulate that fifty (50) sample ballots were case (sic) and counted in Buffalo Township, Jewell County, Kansas, on this election of November 6th, 1962.

"MR. TEEPLE: It is agreed between the parties, that the court may pretry the validity or legality of the votes that were case (sic) on yellow ballots, and determine the count resulting from any decision that he may make as to their validity.

"And, that his determination shall be considered as an established fact in this case, and be considered upon his ruling on the demurrer now pending before him.

"MR. Ross: No objection. He is going to consider anything he wants to.

"MR. WELTMER: You do not want to agree that he can open the box? You do agree that the suggested agreement, dictated by Mr. Teeple, is agreed to by you?

"MR. Ross: Wait a minute. Read the stipulation.

"(The reporter read the stipulation from his notes. There was a discussion on the idea of opening the ballot box. There was no definite answer to Mr. Weltmer's question. Mr. Ross did indicate agreement to pretry the yellow ballot question, *but did not agree that the ballot box be opened.*)" [Emphasis supplied.]

On January 16, 1963, a hearing was held to consider the yellow sample ballots which were voted in Buffalo Township. Counsel for defendants opened with the following statement:

"MR. MYER: If the court please. This matter comes on by agreement and arrived at by a pre-trial conference. It was agreed and stipulated that in the Buffalo precinct township, in the general election held on November 6, of last year, that fifty (50) or approximately fifty yellow sample ballots were counted and voted on the hospital proposition. We have subpoenaed all ten members of the election board that conducted the election at the precinct and township trustees, and will endeavor to show the court all matters of interest to the court so as to see if those ballots were legal and should be counted."

Counsel for plaintiffs made no objection to the procedure but did appear to believe that only evidence pertaining to the validity of the same ballots was to be considered. His opening statement reads in part:

". . . The evidence will show that there was not one person, or voter, that did anything wrong. Alvin Fall made a mistake, but the voters did not make a mistake. The evidence will show that the board thought about it, did not believe anybody done anything wrong, so counted them. They did their best and that is all the law says for them to do."

The defendants called the ten witnesses mentioned in the opening statement. They testified as to the means by which the yellow sample ballots were placed in the hands of the voters and reached the ballot box. After the introduction of the testimony the following occurred:

"Mr. Teeple: We would like to ask at this time that the election box be opened and these ballots counted. The election box of the Buffalo Township, Jewell County, Kansas.

"The Court: Your request is granted.

"Mr. Teeple: The court orders the clerk to bring up the ballot bag and open it?

"The Court: Yes, it is so ordered. The clerk will get the ballot bag; I am ruling that the ballot box be opened and counted, vote on sample ballots . . . does not mean that I have finally decided that those colored ballots are illegal ballots, and cannot be counted for or against.

"Mr. Ross: *Just to establish the number?* [Emphasis supplied.]

"The Court: Yes, I want to decide every phase of this issue that is being tried.

"(Thereupon a short recess was had. After the recess the following occurred.)

"The Court: Mr. Fall is permitted to open the ballot box of Buffalo Township. If we can agree on a procedure—just pick out all of the yellow ballots.

"Mr. Teeple: The unused or spoiled ballots can be taken out and delivered to the County Clerk and that he be, from now on, held accountable for those?

"The Court: All right, it is so ordered.

"(The ballot sack was opened, and the ballots counted.)

"Mr. Ross: May it be stipulated thirty-seven (37) against the levy and nine (9) for the levy?"

On February 23, 1963, the district court made and filed extended findings of fact and conclusions of law, and based thereon concluded that the demurrer to the petition should be sustained. The court appears to have given very little consideration, if any, to the allegations of the petition.

On March 11, 1963, the plaintiffs filed an amended petition which added additional paragraphs and extended many of the paragraphs previously alleged. On March 12, 1963, the defendants filed a motion to strike the amended petition from the files for the reason that it stated no new actionable matter and that:

"The amended petition, including the findings and orders of the court made under the stipulation of the parties, fails to state any new or different cause of action than that attempted to be stated in the original petition."

On April 6, 1963, the district court sustained the motion to strike and decreed as follows:

"It Is Therefore By the Court Ordered, Adjudged and Decreed that the defendants' motion to strike plaintiff's amended petition as amended from the files should be and the same is hereby sustained; that the county clerk of Jewell County, Kansas, is authorized and directed to permit the plaintiffs to examine the declarations filed by sick and disabled voters in the November 6, 1962 election, and plaintiffs are granted ten days from April 3, 1963 in which to file another amended petition."

The plaintiffs then appealed. They specify as error the judgments of the lower court sustaining the demurrer to the original petition and sustaining the motion to strike the amended petition from the files.

Although not specifically raised by the parties, we should first suggest that pretrial procedure has no place in the consideration of a demurrer to a petition. Pretrial proceedings are not authorized until such time as all necessary proceedings are on file and the case is at issue. In *Cow Creek Valley Flood Prevention Ass'n v. City of Hutchinson,* 163 Kan. 261, 263, 181 P. 2d 320, this court stated:

". . . It must, however, be observed the statute grants such discretionary power to pass upon questions of law 'arising in the case' only 'under the allegations of the pleadings.' That means all of the pleadings that may be filed under the provisions of the civil code. Until such pleadings are completed it cannot be certain that the issues are fully joined. Until the issues are fully joined there can be no determination of questions of law which may be relied upon to govern the trial of the case. . . ."

Again in *Connell v. State Highway Commission,* 192 Kan. 371, 375, 388 P. 2d 637, we stated:

"Pretrial proceedings are an adjunct to or a part of the trial of an action on its merits. They are not authorized until such time as all necessary pleadings are on file and the case is at issue. (*City of Hesston v. Smrha,* 184 Kan. 223, 336 P. 2d 428.) Until such time neither questions of law nor questions of fact are ripe for determination. After such time any proceeding constitutes a part of the trial on the merits. . . ."

A trial court should not attempt to hear testimony and determine disputed questions of fact at a pretrial conference.

The appellees contend:

"The stipulation of the parties referred to and set out in the Statement of Facts constituted an agreement of the parties made in open court that the court should pretry the validity or legality of the votes that were cast on yellow ballots, and determine the count resulting from any decision that the court might make as to their validity, that such determination should be

considered as an established fact in this case and should be considered by the court in ruling on the demurrer to the petition then pending before it. . . ."

The appellants suggest that the stipulation did not go to the extent or have the effect contended by appellees. We are inclined to agree. The agreement does appear to cover pretrial of the legality of the yellow sample ballots, but appellants did not agree that the ballot box be opened. When the court directed that the ballot box be opened and the sample ballots counted, appellants stated: "Just to establish the number." There was no agreement that the votes be counted. However, we need not concern ourselves with the extent or effect of the agreement.

A demurrer to a pleading is to be considered entirely upon the allegations contained therein and proper exhibits attached thereto. Evidentiary matters considered at a pretrial conference, agreements, stipulations and exhibits not made a part of the petition may not be considered. (*Southard v. Mutual Benefit Health & Accident Ass'n,* 177 Kan. 26, 276 P. 2d 299.)

In *Whitaker v. Douglas,* 177 Kan. 154, 157, 277 P. 2d 641, this court, in considering admissions made outside the petition, stated:

"We have stated many times that a motion for judgment on the pleadings is to be regarded as a demurrer, treating it as admission of all facts well pleaded by opposing parties, and leaving no issue of fact to be determined. (*Northington v. Northington,* supra; *Simmons v. Gill,* supra.) And the court in so ruling on such a motion or demurrer is not justified in reaching out and making additional facts a part of the pleadings to which the motion or demurrer is lodged. (*Wahl v. Walsh,* Case No. 39,504, infra, this day decided, 177 Kan. 176, 277 P. 2d 623; *Lee v. Beuttel,* 170 Kan. 54, 223 P. 2d 692.)

"Inasmuch as any admissions made by plaintiff are wholly outside the pleadings to which the motion for judgment was lodged, and the defensive matter contained in defendants' answer is denied by plaintiff's reply, the only matter left for our consideration is—does the petition state a cause of action against defendants based on negligence? . . ."

Again in *Franks v. State Highway Commission,* 182 Kan. 131, 319 P. 2d 535, it is stated on page 134 of the opinion:

"The only question before this court involves the petition and although other matters not actually appearing on the face thereof were stipulated below to make it simpler for the trial court to consider the demurrer, they cannot and will not be considered on appeal. (*Whitaker v. Douglas,* 177 Kan. 154, 277 P. 2d 641; *Robinson v. Muller,* 181 Kan. 150, 309 P. 2d 651; *Kleppe v. Prawl,* 181 Kan. 590, 592, 313 P. 2d 227; *Wendler v. City of Great Bend,* 181 Kan. 753, 316 P. 2d 265.)"

The decisions of this court appear to be in harmony with the general rule. In 71 C. J. S. Pleading §§ 256, 257, it is stated:

". . . The scope of the demurrer cannot be extended, even by agreement, to cover facts not appearing on the face of the pleading demurred to." (p. 494.)

"Instruments or documents which do not form a part of the pleading may not be looked to on demurrer, such as affidavits, stipulations of the parties, or an instrument incorporated in an ancillary proceeding; nor may an instrument not set out in the pleading or filed as an exhibit be considered on demurrer. . . ." (p. 501.)

Also in 41 Am. Jur. Pleading § 246, p. 466, it is stated:

". . . According to the weight of authority, matters extrinsic to a pleading may not be considered on the hearing of a demurrer thereto, even though the parties stipulate or agree that such matters may be considered by the court in determining the demurrer. The theory is that since the office of a demurrer is to test the legal sufficiency of the pleading upon the facts as they are alleged, its scope cannot, by agreed statement of facts which neither amends nor purports to amend the pleading, be extended to cover questions which might arise upon a statement of facts otherwise than by the pleading itself. However, there is some authority to the effect that a court in ruling upon a demurrer may consider extrinsic matters stipulated for by the parties, on the theory that such stipulation incorporates those facts into the pleading, . . ."

This court has permitted stipulations to be considered in determining a ruling on a demurrer to a petition when, but only when, the stipulation is incorporated in, or made a part of, the petition. (*Stanolind Oil & Gas Co. v. Cities Service Gas Co.*, 181 Kan. 526, 313 P. 2d 279.)

The trial court had no authority to hold a pretrial conference, hear testimony and determine factual issues as preliminary to a determination of the ruling on the demurrer to the petition.

Appellees contend that when the demurrer was sustained to the original petition and plaintiffs filed an amended petition, they waived the right to appeal from the ruling on the demurrer. They further contend that, in any event, the notice of appeal from the judgment sustaining the demurrer was not filed until 68 days after the judgment was rendered and was not in time. They also contend that the amended petition was nothing more than a refiling of the original petition with minor and unimportant changes, that the amended petition was properly stricken from the files, and did not extend the time for appeal from the judgment sustaining the demurrer to the original petition.

We will not labor the question as to whether the demurrer to the original petition is still before the trial court because it was never

determined by proper judicial procedure. However, it is difficult to see how plaintiffs could acquiesce in the trial court's ruling on the demurrer to the original petition by filing the amended petition when the demurrer to the original petition had not received a proper judicial determination. (*Steel v. Rapp,* 183 Kan. 371, 327 P. 2d 1053.) This controversy can be determined on more firmly established grounds.

Appellees cite *Rockhill, Administrator v. Tomasic,* 186 Kan. 599, 352 P. 2d 444 in support of their contention that the time in which an appeal may be taken cannot be extended by merely refiling what amounts to the same petition. We have no quarrel with appellees' statement of the law. However, we cannot agree with their factual conclusion. We will not set out the extended allegations of the amended petition, but as we have previously stated, it contained additional paragraphs and extended many of those originally alleged. The amended petition did amplify the original and plaintiffs had the right to have the new allegations considered.

Neither do we have here a situation where the ruling on the demurrer to the original petition became the law of the case. It cannot be said that the demurrer was sustained on controverted questions of law. It was rather sustained on issues of fact not raised by the petition.

Perhaps it is now immaterial as to whether the original petition stated a cause of action, as the amended petition, from which the appeal was also taken, did. It should be stated, however, that although the filing of an amended petition constitutes acquiesence in a former ruling sustaining a demurrer and prevents an appeal therefrom as from a final order, it is not conclusive on the appellant as to questions involved therein on appeal from a similar ruling on an amended petition amplifying the original. (*Miles v. Hamilton,* 106 Kan. 804, 189 Pac. 926; *Fruit v. Stacy,* 168 Kan. 632, 215 P. 2d 140.) The question was before this court in *Fisher v. Pendleton,* 184 Kan. 322, 332, 336 P. 2d 472. It is there stated:

"Under the circumstances in the instant case the striking of the 'FIRST AMENDED PETITION' and dismissing the action at the costs of the appellant was a final order. It is clear under G. S. 1957 Supp., 60-3314a, that a valid appeal by a party, after a final judgment against him, does not prevent a review of some other ruling of which complaint is made, even though such ruling may have been entered more than two months before he perfected such appeal. (*Arnall v. Union Central Life Ins. Co.,* 157 Kan. 535, 142 P. 2d 838; and *Drenning v. City of Topeka,* 148 Kan. 366, 81 P. 2d 720.)"

We have no hesitancy in concluding that both the original and the amended petition stated a cause of action.

We have not overlooked, but have disregarded, many of the legal questions which may be of paramount importance after the issues are formed by the pleadings and the factual questions are determined by the trial court. Such questions should not be considered and determined piecemeal.

The judgment is reversed with instructions that the trial court require the defendants to plead to the amended petition and proceed with the determination of the controversy on its merits.

APPROVED BY THE COURT.