**CITY CHEMICAL CORPORATION,**
Plaintiff,

v.

**John SHREFFLER et al., Defendants.**

**No. 71 Civ. 4330.**

United States District Court,
S. D. New York.

Oct. 28, 1971.

Martin Wright, New York City, for plaintiff.

Whitney North Seymour, Jr., U. S. Atty., for Shreffler, McClimans and the United States by Frank H. Wohl, New York City, of counsel.

J. Bernard Slutsky, New York City, for Poly Research Corp.

GURFEIN, District Judge.

This is an action brought by an unsuccessful bidder on a Government contract against two contracting officers of the United States Navy, The Secretary of Labor, the successful bidder and the United States. It is alleged that jurisdiction is conferred by 41 U.S.C. § 35. That is not a jurisdictional section but the Court will assume jurisdiction under 41 U.S.C. § 43a which does confer a "right of judicial review of any legal question" upon "any interested person." Governmental immunity from suit is, thus, specifically waived with respect to the Walsh-Healy Act (Act of June 30, 1936, c. 881; 49 Stat. 2036; 41 U.S.C. §§ 35–45). Under 41 U.S.C. § 43a the "legal question[s] mentioned include" the interpretation "of the terms * * * 'regular dealer', 'manufacturer'," etc.

A losing bidder on a Government bid invitation is an "interested person." See Scanwell Laboratories, Inc. v. Shaffer, 137 U.S.App.D.C. 371, 424 F.2d 859 (1970).

The complaint alleges that certain invitations to bid were issued by the Navy Ships Parts Control Center inviting bids for certain chemicals, in an amount exceeding $10,000, required by the Navy. Under the law (41 U.S.C. § 35; ASPR 12–603) only a "manufacturer" or a "general dealer" is eligible to bid. Plaintiff asserts that it is, and that the defendant, the successful bidder, is

not, a "manufacturer" or "general dealer." Accordingly, it is claimed the defendant Polyresearch Corp. (Polyresearch) was ineligible and that the plaintiff as the next lowest bidder should have been awarded the contract. It is further alleged that the plaintiff notified the Government officials that Polyresearch was ineligible to receive the award but that these defendants have, nevertheless, wrongfully awarded the contract to Polyresearch. Irreparable injury as well as the inadequacy of a remedy at law are alleged. The relief sought is a declaration that Polyresearch is ineligible for the award, setting the award aside, and directing that the contracts be awarded to the plaintiff.

The plaintiff now moves to enjoin performance of the contracts awarded to Polyresearch pending a determination of its eligibility, and for a prompt hearing to determine that eligibility.

The affidavits submitted by the Government state the following facts. McClimans, the contracting officer, affirmed that Polyresearch was the lowest bidder and that it had represented itself as a "general dealer" of the supplies bid on. The contracting officer determined that Polyresearch would be eligible for the award if, on the basis of supporting information, the concern was qualified *either* as a general dealer or as a manufacturer. Evaluations were performed by the Defense Contract Administration Services and the Industrial Relations Labor Office at New York. These evaluations disclosed that (1) Polyresearch was not a regular dealer in this line of chemicals; but that (2) it was a "manufacturer" as defined by the Walsh-Healy Act and Armed Services Procurement Regulation (ASPR 12–603.2).[1] The report indicated that Polyresearch does not manufacture the chemicals but buys them in bulk. Polyresearch tests the chemicals itself or in a testing laboratory, puts them into five pound bottles which are "carefully weighed" and then sealed. The bottles are placed in small cartons, three of which are then placed in a larger carton. That is the substance of the activities leading to the finding that Polyresearch is a "manufacturer." ASPR 12–603.1 defines "a manufacturer" as "a person who owns, operates, or maintains a factory or establishment that produces on the premises the materials, supplies, articles or equipment required under the contract and of the general character described by the specifications."

The plaintiff protested the award upon the ground that the operations of testing and packaging performed by Polyresearch did not make it a "manufacturer" and that it could not qualify as a "regular dealer" because the investigation had disclosed that it was not a regular dealer in these chemicals. The contracting officer denied the protest and forwarded it to the Department of Labor, Administrator of the Wage and Hour Public Contracts Division. The Administrator replied to the contracting officer:

"While your statement that your agency has reviewed all the pertinent data and, in effect, is satisfied that Poly Research Corporation has the necessary space, equipment, and personnel to perform the manufacturing operations required for the fulfillment of the above contracts is not wholly persuasive, we are not inclined, at this time, to take issue with your finding that the firm is eligible as a manufacturer for purposes of the Public Contracts Act."

The plaintiff filed a protest with the General Accounting Office, and while that protest was undetermined, the contracting officer obtained an approval from the Naval Supply Systems Command to award the contract "under urgent circumstances" (ASPR 2–407.8) (Ex. E). The "urgent circumstances"

---

1. These regulations have the force of law. Paul v. United States, 371 U.S. 245, 255, 83 S.Ct. 426, 9 L.Ed.2d 292 (1963). They are, in relevant part, essentially a repetition of the statute.

recited were that "Non-availability of the chemicals could lead to a serious lack of controls over radio-activity, thereby endangering personnel and equipment." (Ex. F) The plaintiff maintains that there was no urgency since it was continuing to supply these chemicals under an expired contract and that, in any event, the requirement was for stockpiling.

There is not a great deal of authority relating to suits by unsuccessful bidders on Government contracts. Without a statutory grant the doctrine of sovereign immunity would have precluded suit. But Congress in the Walsh-Healy Act specifically gave any interested person, as we have seen, the right of judicial review of any legal question arising thereunder.

This Court would have normally been inclined to hold that by virtue of the narrow scope of judicial review of administrative action, whether a bidder is a "manufacturer" of a particular item of supply is peculiarly within the competence of the procurement agency and scarcely within the competence of a Court. But here we are faced with a statute which specifically provides that there shall be judicial review of the interpretation of the term "manufacturer" (41 U.S.C. § 43a). That might mean either that the Court may determine the meaning of "manufacturer" as a legal question resolved by use of the normal tools of judicial research or that the Court may merely review the interpretation given by the administrative agency under the common limitations of such judicial review.

We read the scope of judicial review afforded under the Walsh-Healy Act to be limited to that review permitted under § 10 of the Administrative Procedure Act (5 U.S.C. § 706), for there is no different definition of "judicial review" in the Walsh-Healy Act.[2]

◼ As a matter of review of administrative action, the meaning of terms must, within wide limits, be left to administrative determination. While the Court, as a nonexpert would have been inclined to think that a packager or bottler is not a "manufacturer" of the "materials, articles or supplies," the matter of definition is not so cut and dried as to preclude the Navy's own definition from being reasonable in accordance with its own knowledge of its own needs. Udall v. Tallman, 380 U.S. 1, 85 S.Ct. 792, 13 L.Ed.2d 616 (1965). From the affidavit of Joseph Slepian, the Supervisory Contractor Industrial Relations Specialist for the Defense Contract Administrative Services Region, New York, it appears further, that his personal inspection revealed that the procedures followed by Polyresearch "are similar to those of other chemical manufacturers determined by me to be qualified manufacturers under the Act." The approval by higher authority in the Navy procurement system indicates an acquiescence in Slepian's criteria of judgment. Accordingly, the Court concludes that the defendant Government officers did not exceed the authority vested in them and that they stayed within the ambit of reasonable interpretation of the responsiveness of Polyresearch as a "manufacturer."[3]

◼ The contention that because Polyresearch filed its original bid as a "regular dealer" it could not be awarded the contract as a "manufacturer" is untenable. Neither the statute nor the regulations provide for such distinct

---

2. The annotator's note in 5 U.S.C. § 701 considers the Administrative Procedure Act to be "applicable" to the "Walsh-Healy Act, see Section 43a of Title 41, Public Contracts" (5 U.S.C.A. page 154).

3. As the Supreme Court said in Unemployment Compensation Commission of Territory of Alaska v. Aragon, 329 U.S. 143, 153, 67 S.Ct. 245, 250, 91 L.Ed. 136 (1946): "To sustain the Commission's application of the statutory term, we need not find that its construction is the only reasonable one or even that it is the result we would have reached had the question arisen in the first instance in judicial proceedings."

classes. If a firm is *either* a regular dealer *or* a manufacturer, it is eligible.[4]

This determination makes it unnecessary to answer the difficult question of whether injunctive relief may not and should not, in any event, be denied in a field where countless short term procurement contracts are entered into by the United States, and where Court injunctions might cripple vital Governmental functions. See Simpson Electric Company v. Seamans, 317 F.Supp. 684 (D.D.C.1970).[5]

The motion for a temporary injunction is denied. The foregoing shall constitute findings of fact and conclusions of law under Rule 52(a) F.R.Civ.P.

So ordered.

---

4. The contention that the declaration of urgency was an abuse of discretion is, in most cases, hardly a justiciable question, for by the time the dispute can be settled in a court the danger may well have actually overtaken the judicial process. The Court cannot chance the occurrence of atomic radiation because of any view it might have as to the urgency of supply. We have, in any event, accepted jurisdiction on the basis that the administrative remedy has been exhausted and have made a decision on the merits.

5. The mere statement that the remedy at law is inadequate does not make it so. Claims for money damages against the United States may be brought in the Court of Claims in a proper case.