**SIMPSON ELECTRIC COMPANY,**
Plaintiff,

v.

**Dr. Robert C. SEAMANS, Jr., et al.,**
Defendants.

**Civ. A. No. 2713-70.**

United States District Court,
District of Columbia.

Sept. 29, 1970.

Edison Dick, Peter Derry, Washington, D. C., for plaintiff.

Joseph Hannon, Michael McGarry, Asst. U. S. Attys., Washington, D. C., for defendants.

## MEMORANDUM OPINION

GESELL, District Judge.

Since the decision in Scanwell Laboratories, Inc. v. Shaffer, 137 U.S.App.D.C. —, 424 F.2d 859 (1970), a number of cases have been filed in the District Court by disappointed bidders on government contracts, seeking to overturn the Government's award of a contract to a competing bidder or to enjoin an award yet to be made. While the *Scanwell* decision settled the questions of standing and jurisdiction, it did not specify the standard that should govern the Court's review of such challenged governmental actions, nor did it indicate the scope of relief a District Court may properly grant under any given set of circumstances. The present case, which is before the Court on cross-motions for summary judgment after full argument, raises these open issues in the context of procedures which may well be typical of future cases. Since authorities are sparse, a full discussion is appropriate.

Plaintiff's Complaint for Judicial Review challenges the action of the Government in awarding a short-term military supply contract for approximately 3,000 multimeters to Bruno-New York Industries Corporation. Plaintiff submitted a bid modification via Telex to Kelly Air Force Base thirty-nine minutes before the bid opening at that location. The Telex communication was not delivered by the Base Communications Center to the buyer's office until well after the time for opening of bids. The contracting officer, however, determined that the late receipt was "due solely to mishandling of the message by the Government after receipt," and posted his decision that plaintiff's bid was the lowest.

Bruno, the second lowest bidder, protested this decision to the Comptroller General under applicable regulations. 4 C.F.R. § 20.1 (1969). The contracting officer thereupon issued a statement of findings supporting his original decision, which he reaffirmed after the Office of the Judge Advocate General of the Air Force suggested he reconsider. The Comptroller General, however, decided that the contracting officer's findings were erroneous, and advised that plaintiff's bid modification was tardy and therefore unacceptable. Upon plaintiff's request for reconsideration, the Comptroller General reaffirmed his decision. Shortly thereafter, the contracting officer reluctantly bowed to the practicalities and awarded the contract to Bruno.

The complaint here is properly couched in terms of a review of final agency action under the Administrative Procedure Act, 5 U.S.C. § 500 et seq. The action of the agency must be set aside if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706. The initial relevant question is whether the action of the Comptroller General or the action of the contracting officer constitutes the final agency action subject to review. There is no decision flatly in point. The function of the Comptroller General in the process of awarding government contracts is knowledgeably discussed by Judge Holtzoff in United States ex rel. Brookfield Const. Co. v. Stewart, 234 F.Supp. 94, 99–100 (D.C. D.C.1964), and by the Court of Claims in John Reiner & Co. v. United States, 325 F.2d 438, 440, 163 Ct.Cl. 381 (1963). While a bidder who contests an award by the contracting officer may address his protest to the Comptroller General, such a protest is not a prerequisite to judicial review. Scanwell Laboratories, Inc. v. Shaffer, *supra*, 424 F.2d at 875.

As these decisions indicate, the Comptroller General controls disbursements from the public treasury, and will, upon request, give an advisory opinion on the legality of a particular contract on which payments by the United States are contemplated. Although his decision is as a practical matter usually decisive upon the contracting officer, it does not technically bind him, and the Comptroller General, of course, cannot award a contract. Thus, while both parties suggested that the Comptroller General's action was properly the one to review, the Court is persuaded that it is the contracting officer, rather than the Comptroller General, whose action is "final" within the meaning of the Act.

Turning to the facts of this case, the Court is accordingly faced with the question whether the contracting officer in awarding the contract acted arbitrarily, capriciously, or in violation of law. For the purposes of making this determination, the Court must examine the reasoning of the Comptroller General, for it was his decision which as a practical matter forced the contracting officer, against his better judgment, to award the contract to Bruno. On the undisputed facts, and after giving weight to the Comptroller General's opinion, the Court has concluded that the refusal to accept plaintiff's bid modification as timely was arbitrary and irrational.

The pertinent provision of the bid solicitation declared that "Offers and modifications of offers * * * received at the office designated in the solicitation after the exact hour and date specified for receipt will not be considered unless: * * * (3) * * * it is determined by the Government that the late receipt was due solely to mishandling by the Government after receipt at the Government installation." The office designated in the solicitation was the Directorate of Procurement and Production (DP & P), Kelly Air Force Base. Plaintiff's properly addressed telegraphic bid modification was received at the Base Communications Center at 12:51 p. m. on February 24, thirty-nine minutes before the 1:30 p. m. deadline, but was not delivered to the DP & P office until 9:15 a. m. the next morning. Although the Comptroller General did not dispute the fact that a delay of twenty hours was excessive, he concluded that "such a message could not reasonably have been communicated to the proper office within the 39 minutes * * *." (Letter in reply to plaintiff's request for reconsideration, page 2.)

Though this conclusion was at odds with the finding of the contracting officer, it was not within its terms arbitrary or irrational, in view of the large number of messages received at the communications center, the necessity for routine handling of messages, and the lack of any priority designation on the face of the telegram. The flaw in the Comptroller's reasoning lies rather in his position that "mishandling by the Government" is to be determined solely with reference to the usual method of handling messages at the Base, en-

tirely ignoring the Government's course of dealing with plaintiff. The Comptroller held that plaintiff should have used a Telex number for DP & P, rather than for the communications center. This position is clearly arbitrary, in view of the fact that the Telex number for DP & P was not listed in the only directory available to the public at the time, and the fact that plaintiff had used the Telex at the communications center for approximately one year without being informed that another Telex was being made available.

Had the Comptroller recognized that the course of dealing with plaintiff and other bidders was relevant to the question of mishandling,* he could only have found that the message was mishandled by the Government. Neither in the bid solicitation nor in any prior dealings relating to the bid had the Government indicated that telegrams would be handled at Kelly Air Force Base in any manner other than the usual commercial practice. The Comptroller did not dispute that under normal commercial practice, a telegram need not be marked "urgent," or that a telegram received at the addressee's place of business will be delivered to him well within thirty-nine minutes. If the Government desired designation for special handling or use of any other Telex number, it surely had the duty to give notice of that fact to bidders with whom it was in contact. Thus the determination that plaintiff's bid modification was not timely must be set aside.

There remains the question of what relief is appropriate under these circumstances. Plaintiff seeks an injunction requiring the Government to go forward on the contract with plaintiff. It seeks this mandatory relief in the face of the

fact that the contract had already been let to Bruno, which is not before the Court and the extent of whose performance to date is unknown but undoubtedly substantial.

■ There can be no fixed rule, as the Government urges, that the Court can never require the Government to enter into a contract or enjoin it from proceeding with a contract. Cases such as Larson v. Domestic & Foreign Corp., 337 U.S. 682, 69 S.Ct. 1457, 93 L.Ed. 1628 (1949); Malone v. Bowdoin, 369 U.S. 643, 82 S. Ct. 980, 8 L.Ed.2d 168 (1962); and United States ex rel. Brookfield Const. Co. v. Stewart, 119 U.S.App.D.C. 254, 339 F.2d 753 (1964), would seem to lend weight to the Government's position in this regard, but none of these cases, in which claims were rejected on grounds of sovereign immunity, were cast as actions for judicial review under the Administrative Procedure Act. In Scanwell Laboratories, *supra*, where the action was predicated upon the Administrative Procedure Act, the Court of Appeals stated that "there is no right in Scanwell to have the contract awarded to it in the event the district court finds illegality in the award of the contract to Cutler-Hammer." 137 U.S.App.D.C. 376, 424 F.2d 864. This statement, however, must be read merely as a recognition that Scanwell had not established facts which would compel award of the contract to itself in the event the award to Cutler-Hammer should be declared void. Finally, the broad rule suggested by the Government is contradicted by Superior Oil Co. v. Udall, 133 U.S.App.D.C. 198, 409 F.2d 1115 (1969), where the Court of Appeals affirmed an order of the District Court compelling the Secretary of the Interior to issue a lease to a bidder whom the court held was entitled to

---

* The Assistant Comptroller General, in his reply to plaintiff's request for reconsideration, stated:
"The fact that you did not make use of the telex facility located in the DP&P, for whatever reason, is not relevant to this basic question and even though the Air Force erroneously imputed knowledge to you of the telex facility at DP&P, such error could not have affected the determination as to whether the message as sent should have been received at DP&P within 39 minutes of its receipt at the Communications Center."

688

the contract. Though the court did not cite the Administrative Procedure Act, the opinion is phrased in terms of judicial review of final agency action. Thus it is apparent that this Court has power to compel award of a contract to the lowest bidder.

■ Nevertheless, injunctive relief is discretionary and a remedy that should be most sparingly used. The situation presented in *Superior Oil Co., supra,* where the contract involved millions of dollars, called for a long-term performance, and had not yet been awarded, is wholly different from a more routine, short-term procurement where performance has already begun, such as the Court is considering here. In this instance plaintiff and Bruno may perfect their rights to damages, if any, in the Court of Claims. Mandatory relief by way of injunction is not required to preserve the integrity of the bid process since a declaration of rights with the liability for damages that will flow therefrom will suffice. This Court's discretion will be exercised accordingly.

■ The Court is hesitant to utilize its injunctive powers for yet another reason. Neither the Administrative Procedure Act nor *Scanwell Laboratories, supra,* can be responsibly read, whether singly or together, as contemplating that the Court in all disputed cases will direct the course of Government contracting. As already indicated, the scope of review is narrow, and once the rights of litigants are declared, the Government should in the normal case be free to make choices as to whether it will run the risk of damages, open the contract for rebidding, resolve the dispute by negotiation, or meet its needs, if they still exist, in some other fashion. The variety and complexity of situations that will be presented make it abundantly apparent that in the usual case the courts have only a limited function in this area.

Thus the Court declares that plaintiff was the lowest bidder. He was admittedly qualified in all other respects and it was illegal to award the contract to anyone else. No injunctive relief shall be granted. An order denying the Government's motion and granting plaintiff's motion in part shall be submitted. No further proceedings are required.

