**WILLIAM F. WILKE, INC.**

v.

**DEPARTMENT OF the ARMY OF the UNITED STATES of America, and Robert F. Froehlke, Secretary of the Army.**

Civ. No. 73–313–HM.

United States District Court, D. Maryland.

April 16, 1973.

On Motion April 26, 1973.

Allan J. Malester, Roy Niedermayer, Baltimore, Md., for plaintiff.

George Beall, U. S. Atty., for the District of Maryland, Thomas L. Crowe, Asst. U. S. Atty., Baltimore, Md., for defendants.

MURRAY, District Judge.

On April 5, 1973 the Plaintiff William F. Wilke, Inc. a general building contractor in Baltimore County, Maryland brought suit under the Administrative Procedure Act (5 U.S.C. § 701 et seq.) for review of the final action of the Department of the Army and Robert F. Froehlke, acting as Secretary of the

Army in awarding to A. & M. Gregos, Inc. a government contract for modernization of barracks facilities at Fort George G. Meade, Maryland. The Plaintiff's complaint sought a preliminary and permanent injunction and declaratory relief under 28 U.S.C. § 2201 et seq. in the form of a judgment declaring the invalidity of the award.

With the complaint the Plaintiff filed a motion for a temporary restraining order under Rule 65(b). Such an order was issued by Judge Young of this Court on April 5, 1973, and at that time a hearing was scheduled before the undersigned Judge on Plaintiff's request for a preliminary injunction for April 10, 1973.

Immediately prior the the April 10 hearing the Defendants filed a motion to dismiss, or in the alternative, for summary judgment with a supporting memorandum and affidavits. Additionally, the Defendants filed a motion for an order directing the Plaintiff to join A. & M. Gregos, Inc. as a party defendant. Counsel for Gregos was present at the April 10 hearing and requested the opportunity to file a memorandum in opposition to Plaintiff's suit and a motion to intervene. The Court extended the temporary restraining order to April 16, 1973 to permit the filing of these papers. Following the hearing, such papers were filed by Gregos and additionally, Plaintiff has filed a motion for summary judgment with a supporting memorandum and affidavits.

The Court having had an opportunity to review the motions, memoranda and affidavits submitted by the parties, feels it is in possession of enough information to decide the matter without the need of any further hearing.

### THE BACKGROUND FACTS

On December 4, 1972, Invitation for Bids No. DACA 31–73–B–0040 was advertised for Barracks Rehabilitation, Fort George G. Meade, Maryland. Bids were to "be received until 3:00 p.m. Local Time at the place where bids are received on 23 January at the Office of the District Engineer, U. S. Army Engineer District, Corps of Engineers, Federal Building, 31 Hopkins Plaza, Baltimore, Maryland; and at that time publicly opened. Hand carried bids must be deposited in bid depository provided therefor in Room 1225."

Prior to 3:00 p.m. on January 23, 1973 the bid of William F. Wilke, Inc. was deposited by its Vice President Robert Fisher in the bid depository box maintained for receipt of bids in Room 1225, Federal Building. At 3:00 p.m. Mr. Fisher was present for the opening of bids in Room 1208. He watched the removal of bids from the box at 3:00 p. m., including the bid of his own company and that of A. & M. Gregos, Inc.[1]

In connection with this first invitation for bids, William F. Wilke, Inc. was determined to be a responsible bidder by the Department of the Army, Baltimore District, Corps of Engineers.[2]

Because of certain ambiguities in the specifications contained in the first invitation to bid it was cancelled by the Corps of Engineers.

Subsequently on February 20, 1973, the Corps readvertised the Barracks Rehabilitation Project as Invitation for Bids No. DACA 31–73–B–0066.

The invitation specified that:

"[S]ealed bids in DUPLICATE for the work described herein will be received until 3:00 p.m. local time at the place where bids are received on 73 Mar 13 at the Office of the District Engineer, U.S. Army Engineer District, Corps of Engineers, Federal Building, 31 Hopkins Plaza, Baltimore, Maryland; and at that time publicly opened. Hand carried bids must be deposited in bid depository provided therefor in Room 1225."

Attached to the invitation was "Instructions to Bidders, Standard Form

---

1. Robert Fisher affidavit of April 12, 1973.

2. A. C. Seeman affidavit of April 12, 1973.

22," which, in paragraph 7 thereof, stated:

"(a) Bids and modifications or withdrawals thereof received at the office designated in the invitation for bids after the exact time set for opening of bids will not be considered unless: (1) They are received before award is made; and either (2) they are sent by registered mail, or by certified mail for which an official dated post office stamp (postmark) on the original Receipt for Certified Mail has been obtained and it is determined by the Government that the late receipt was due solely to delay in the mails for which the bidder was not responsible; or (3) if submitted by mail (or by telegram if authorized), it is determined by the Government that the late receipt was due solely to mishandling by the Government after receipt at the Government installation: Provided, That timely receipt at such installation is established upon examination of an appropriate date or time stamp (if any) of such installation, or of other documentary evidence of receipt (if readily available) within the control of such installation or of the post office serving it. However, a modification which makes the terms of the otherwise successful bid more favorable to the Government will be considered at any time it is received and may thereafter be accepted."

Also attached to the invitation was a document containing provisions to be read in conjunction with Instructions to Bidders (Standard Form 22), paragraph "3" of which stated:

"Hand carried bids must be deposited in a depository provided therefor in Room 1225."

On March 13, 1973, Robert Fisher, Vice President of the Plaintiff, and Charles Spallitta, also a Vice President of the Plaintiff, met a representative of A. & M. Gregos, Inc. in Room 1225, the location of the bid depository box, at approximately 2:00 p.m. Thereafter, at 2:50 p.m. Robert Fisher submitted the bid of William F. Wilke, Inc. in the amount of $2,941,349.00 by depositing the same in the bid depository box located in Room 1225.[3]

At 2:56 p.m. Mr. James Hershey of the Corps of Engineers removed the bid box from Room 1225 and took it to Room 1208 (about 80 feet away) where the opening of the bids was to take place. Mr. Hershey arrived in Room 1208 a moment or two before the scheduled opening time of 3:00 p.m.

On arrival in Room 1208 Mr. Hershey placed the still locked bid box on the table and left the room to request the attendance of an attorney from the Office of Counsel for the Corps of Engineers. Mrs. Della K. McKnew, Acting District Counsel, entered the room at approximately 3:00 p.m. and agreed to serve as bid officer. At this time, Robert Fisher and Charles Spallitta were in the room as representatives of William F. Wilke, Inc. along with other interested bidders and industry representatives, including Nicholas Tsarouhous, the representative of A. & M. Gregos, Inc.

Thereupon Mrs. McKnew as bid officer, proceeded to unlock the bid box and remove the bids pertaining to the subject solicitation. While she was separating the bids under this solicitation from other bids in the bid box, but prior to any announcement that the time for bid opening had arrived, Mr. Tsarouhous, the representative of A. & M. Gregos, Inc., rose from his seat, removed his bid from his inside coat pocket, and placed it on the table where the bids were being sorted, the time being approximately 3:04 p.m.

The bid thus submitted by Mr. Tsarouhous was accepted for consideration, and Mrs. McKnew then proceeded to make the bid opening announcement with the statement, "It is now 3 o'clock, time to open bids on Invitation No. DACA 31–73–B–0066. Are all bids in?" The first bid was then opened at approximately 3:05 p.m. As it turned

---

3. Robert Fisher affidavit of April 9, 1973.

out there were five bidders. The low bidder was A. & M. Gregos, Inc. with a bid of $2,877,000.00. The second low bidder was William F. Wilke, Inc. whose bid was $2,941,349.00.

Immediately following the opening of the bids, Robert Fisher as representative of William F. Wilke, Inc. orally protested the acceptance of the Gregos bid, but his protest was denied by Mrs. McKnew.

At approximately 4:35 p.m. Local Time, William F. Wilke, President of William F. Wilke, Inc., telegraphed the District Engineer, U. S. Army Corps of Engineers, protesting the award to Gregos on the ground that its bid was not submitted timely. This was followed by a formal letter of protest by President William F. Wilke dated March 15, 1973.

Acting District Counsel Della K. McKnew by letter then notified A. & M. Gregos, Inc. on March 19, 1973 of Plaintiff's protest and invited Gregos to submit its views and furnish relevant information regarding the protest not later than March 26, 1973. Gregos responded by letter dated March 23, 1973, in which it termed Plaintiff's contention that its bid was late "frivolous".

On March 28, 1973, a notice of award accepting the Gregos bid was issued by the Corps of Engineers to Gregos by telephone and by mail. Thereafter, on March 30, 1973, James K. Hershey, Chief, Contracts Branch, Procurement and Supply Division, Corps of Engineers, notified William F. Wilke, Inc. by letter that its bid protest had been denied by the General Counsel of the Corps of Engineers.

Following this official rejection of its protest, Wilke through its counsel on April 4, 1973 advised counsel for the Corps of Engineers that the Plaintiff would seek a temporary restraining order in the Federal Court the next day at 2:00 p.m.

On April 5, 1973, at 11:45 a.m., counsel for the Corps of Engineers advised Plaintiff's counsel that the contract for the project executed by Gregos had been received back in the office of the Corps of Engineers and would be executed that morning. At about 12:58 p.m. the contract was signed in the office of the Corps of Engineers and it telegraphed Gregos a notice to proceed with the work. About an hour later at 2:00 p.m., counsel for the Plaintiff and the Corps of Engineers met with Judge Young who signed a temporary restraining order at 2:30 p.m.

On April 7, 1973, A. & M. Gregos, Inc. received written notice from the contracting officer for the Corps of Engineers that a temporary restraining order had been granted against the Government. However, it appears that between March 28, 1973, the date the contract was awarded to Gregos, and April 7, 1973, the date Gregos learned of the temporary restraining order, Gregos entered into contractual relations with a mechanical subcontractor in the amount of $782,000.00, an electrical subcontractor in the amount of $290,000.00 and entered upon a contract for lumber and millwork in the amount of $192,850.00.[4]

## THE APPLICABLE LAW

In a landmark case, Scanwell Laboratories, Inc. v. Shaffer, 137 U.S.App.D.C. 371, 424 F.2d 859 (1970), the United States Court of Appeals for the District of Columbia Circuit held that a party denied a government contract as a result of alleged illegal activity on the part of a federal agency in letting the contract to another bidder, has standing under the Administrative Procedure Act, 5 U.S.C. § 701(a)(2) (1970), to bring suit for declaratory and injunctive relief in order to determine the validity of the agency's action. However, this Court in the light of its experience in the present case is sympathetic with the observation of Circuit Judge Leventhal in the subsequent District of Columbia case M. Steinthal & Co. v. Seamans, 147 U.S. App.D.C. 221, 455 F.2d 1289 (1971),

---

4. Walter F. Rupinski affidavit of April 11, 1973.

when he stated that the experience of that Court after *Scanwell* was:

"After the agency has reached a decision, the losing bidder has rushed into court seeking to halt the particular procurement and to obtain an immediate judicial reconsideration of the agency's determination. The court is at one and the same time confronted with a number of technical procurement statutes and regulations, contract provisions and specifications, and asked to determine expeditiously whether the procurement should proceed."

■ A short and simple answer the Court will give to that question in the present case is that the procurement should proceed (i.e., The Court will deny injunctive relief) but that the disappointed bidder, the Plaintiff William F. Wilke, Inc., is entitled to a judgment declaring that the successful bid of A. & M. Gregos, Inc. was not timely filed under the applicable statutes and regulations. This will permit Wilke to pursue a damage remedy in the Court of Claims.

The reasons the Court reaches this conclusion may now be stated.

The Armed Forces Procurement statute, 10 U.S.C. § 2305(c), requires:

"Bids shall be opened publicly at the time and place stated in the advertisement."

The Armed Forces Procurement regulations adopted pursuant to 10 U.S.C. § 121, are found in 32 C.F.R. § 1–101 et seq., subpart C of the regulations entitled "Submission of bids" provides in § 2.301(a):

"To be considered for award, a bid must comply in all material respects with the invitation for bids so that, both as to the method and timeliness of submission as to the substance of any resulting contract, all bidders may stand on an equal footing and the integrity of the formal advertising system may be maintained."

Additionally, § 2.302, "Time of bid submission" provides:

"Bids shall be submitted so as to be received in the office designated in the invitation for bids *not later than the exact time set for opening of the bids*. (Emphasis supplied)."

Further, the regulations also provide in § 2.303–1:

"Bids which are received in the office designated in the invitation for bids after the exact time set for opening are 'late bids,' even though received only one or two minutes late. Late bids shall not be considered for award except as authorized in §§ 2.303 through 2.303–8."

It should also be noted that § 2.303–5 of the regulations dealing with hand-carried bids provides:

"A late hand-carried bid, or any other late bid not submitted by mail or telegram, shall not be considered for award."

In a closely analogous fact situation in 51 Comp.Gen. 173 (1971), the bidder attempted to turn in his bid in the bid opening room about 55 seconds after the time set for the opening of bids, although still before any other bids had been opened or read. The late bidder argued that no competitive advantage had accrued to it nor had there been any prejudice to other bidders since no other bids had been opened and read as of the time of the late bid submission. Nevertheless, the Comptroller General's office held the bid to be a late bid not to be considered for award, stating that:

"This Office has consistently taken the position that these, and other similar, regulations must be strictly construed and enforced. Thus, in our decision reported at 47 Comp. Gen. 784 (1968), where a bid was hand delivered late, but prior to opening of the first bid, we said:

'In keeping with the clear mandate of these regulations, this Office has consistently refused to permit consideration of hand delivered bids after the time set for the final re-

ceipt of bids even where no bids have been opened. B–137550, December 18, 1958 and B–164073, April 24, 1968.

Your client's lack of knowledge of other bid prices and good faith are, under the circumstances, not relevant. Further, it is the opinion of this Office that competition is strengthened by insuring that only those bids received before the time stated are for consideration. While this may operate harshly in certain instances, any relaxation of the rule would inevitably create confusion and disagreements as to its applicability under varying circumstances and would increase the opportunity for frauds. B–130889, March 26, 1957.'

While the bid in that case was delivered 15 minutes after the time set for bid opening, we are aware of no reason why a distinction should be made, or a different conclusion should be reached where, as in the instant case, it appears that the bid was hand delivered about 55 seconds after bid opening time. See, in this connection, B–137550, December 18, 1958, in which we reached the same conclusion where a bid was five minutes late; B–130889, March 26, 1957, where the bid was two minutes late; and B–164073, April 24, 1968, where the bid was four minutes late by the bid opening room clock, but only one minute late by the time subsequently determined to be the correct time. As stated repeatedly in the decisions of this Office, we believe that maintenance of confidence in the integrity of the competitive bidding system is of much greater importance than a monetary saving in an individual procurement." Id. at 177.

In the light of the applicable regulations as they have been construed by the Comptroller General's office, it would appear that the Gregos bid was a late bid and should not have been considered for award. Defendants, on the other hand, contend that the time for bid opening did not arrive until 3:05 p.m. and therefore that the Gregos bid, instead of being four minutes late, was actually one minute early. They base this contention on § 2.402–1 of the regulations which deals with the opening of unclassified bids and reads as follows:

"(a) The official designated as the bid opening officer shall decide when the time set for bid opening has arrived, and shall so declare to those present. He shall then personally and publicly open all bids received prior to that time, and when practicable, read them aloud to the persons present, and have the bids recorded. The original of each bid shall be carefully safeguarded until the abstract of bids required by § 2.403 has been made and its accuracy verified."

The contracting officer in his report denying the bid protest of Wilke, after citing the quoted regulation, stated:

"In this instance the officer decided the time for bid opening had arrived at 3:05, the time the first bid was opened. This decision was not the result of an arbitrary choice but rather was done in accordance with long standing procedures of the Baltimore District. The procedure of the District is to open the bid box and sort the bids at the time noted in the invitation and to close bidding upon the completion of the bid opening announcement and the actual physical opening of the first bid. The time for opening bids was therefore the time designated by the bid opening officer, that being 3:05 and thus, after the submission of the Gregos bid. * * * Both Gregos and the protesting bidder, Wilke, are familiar bidders to the Baltimore District. Both have attended many bid openings held at this office and, at all openings, the procedure described above as to opening the box and then making the announcement has been followed. This course of conduct by the Baltimore District should have come as no surprise to either bidder. Wilke has never before questioned the propriety of the bid

opening procedure, and did not do so on this occasion until it was apparent that A. & M. Gregos was low bidder. Gregos was justified in relying on the validity of the bid opening procedures of Baltimore District and as such was justified in the assumption that his bid would be acceptable when submitted prior to the bid opening announcement being made."

This Court would be loath to rule that the provision of the regulations dealing with opening of bids serves to create a flexible time limit for the submission of bids. Rather, the Court believes that Plaintiff in its memorandum is correct in stating:

"In addition, the strict construction and application of the regulations provides for uniform treatment of bidders and prevents confusion and disagreement as to the applicability of the regulations or timeliness of the submission of bids under varying factual circumstances by different officials. To allow the bid opening officer to exercise an absolute and arbitrary discretion conclusive upon the bidders as to the moment up to which bids will be accepted in contravention of the exact time set forth in the invitation for bidding, injects an unnecessary element of confusion into the process, as well engendering the material for disagreements and a 'brinkmanship' mentality alien to the intent and purpose of the procurement regulations. Such an attitude on the part of the officials administering the process, and thereby instilled in the bidders participating, can only destroy confidence in the fairness and integrity of the competitive bidding system."

Likewise, the Court is not impressed by Defendants' argument based on the practice said to have existed in the Baltimore District for a period of sixteen years. Defendants apparently would suggest that their custom of reading a pre-bid opening announcement was relied upon by bidders in prior years to enable them to submit bids in the bid opening room and to have them accepted in such room by the bid opening officer, and that such practice was known to both the successful and losing bidders in the present case. The short answer to this is, as noted by Plaintiff in its brief, that except in the case of Gregos in connection with the March 13, 1973 opening, neither the Defendants nor Gregos alleged that there was ever an occasion when a bid was tendered and accepted in the bid opening room of the Corps of Engineers, Baltimore District.

While the Court believes that the position of the Plaintiff with regard to the lateness of the Gregos bid is correctly taken, nevertheless the Court does not feel that injunctive relief is called for. The Court is cognizant of Judge Leventhal's comment in *Steinthal:*

"*Scanwell* and its progeny impose a concomitant responsibility upon the courts to study these cases attentively and to exercise with restraint the power to enjoin a procurement program." M. Steinthal & Co., *supra* at 1301.

In this connection, with regard to the extraordinary remedy of injunction, this Court believes (again as indicated by Judge Leventhal in *Steinthal*) that it should "stay its hand even though it might, as an original proposition, have reached a different conclusion as to the proper administration and application of the procurement regulations. Otherwise, the courts would become the forum for all manner of objections to procurement decisions—objections that counsel can readily relate to the language of some provision or other in some procurement regulation—and would be propelled without adequate preparation into a tangle of complex statutory and decisional rules." Additionally, the Court feels there is no overriding public interest in this case which would require the disruption of engagements already entered into by the successful bidder before court intervention was sought, particularly where the Court does not conceive that it should exercise in this case any

power it might have to direct the Government to award the contract to the Plaintiff Wilke.[5]

Finally, the Court agrees with the statement in the *Steinthal* case:

"The availability of a damages remedy in the Court of Claims, which in many cases will compensate the frustrated bidder's realized financial losses (i. e., the bid preparation costs) resulting from the illegal agency action, provides a sound equitable basis for the exercise of this discretion in considering whether to entertain a suit for injunctive relief." M. Steinthal & Co., *supra* at 1302.

The Court concludes that it will adopt the remedy of declaratory relief as did Judge Gesell in the case of Simpson Electric Company v. Seamans, 317 F. Supp. 684 (D.C.1970).

There is attached to this opinion an Order ruling on the various motions filed and providing for appropriate declaratory relief while denying injunctive relief.

### ORDER

This cause having come on for hearing on April 10, 1973 on Plaintiff's request for a preliminary injunction, argument of counsel having been heard, the Court having read and considered the various motions filed by the parties with supporting memoranda and affidavits, it is this *16th* day of April, 1973, and for the reasons stated in the foregoing opinion by the United States District Court for the District of Maryland, hereby Ordered:

(1) That Defendants' motion to dismiss the complaint for failure to state a claim upon which relief can be granted under Rule 12(b)(6), Federal Rules of Civil Procedure or in the alternative for summary judgment pursuant to Rule 56, Federal Rules of Civil Procedure be, and the same hereby is, *Denied,* and

(2) That Defendants' motion for an order directing Plaintiff to join A. & M. Gregos, Inc. as party defendant pursuant to Rule 12(b)(7), Federal Rules of Civil Procedure be, and the same hereby is, *Denied,* and

(3) That the motion of A. & M. Gregos, Inc. to intervene as a party defendant be, and the same hereby is, *Granted,* and

(4) That the proposed answer to Plaintiff's complaint by A. & M. Gregos, Inc. as intervenor-defendant be, and the same hereby is, ordered filed and docketed, and

(5) That the Plaintiff's motion for summary judgment insofar as it seeks an adjudication as a matter of law that Plaintiff is entitled to a preliminary injunction (Paragraph A of the prayers for relief) or a mandatory permanent injunction (Paragraph C of the prayers for relief), be, and the same hereby is, *Denied,* and

(6) That Plaintiff's motion for summary judgment insofar as it seeks an adjudication as a matter of law that Plaintiff is entitled to a declaratory judgment under Part (a) of Paragraph B of the prayers for relief be, and the same hereby is, *Granted,* and it is hereby determined and declared that the bid of A. & M. Gregos, Inc. attempted to be submitted at 3:04 p. m. on March 13, 1973 in Room 1208, Federal Building, 31 Hopkins Plaza, Baltimore, Maryland to

---

5. As Judge Gesell stated in Simpson Electric Company v. Seamans, 317 F. Supp. 684, 688 (D.D.C.1970): "... once the rights of litigants are declared, the Government should in the normal case be free to make choices as to whether it will run the risk of damages, open the contract for rebidding, resolve the dispute by negotiation, or meet its needs, if they still exist, in some other fashion." See also Pace Co., Div. of Ambac Industries, Inc. v. Department of Army of United States, 344 F.Supp. 787, 790 (W.D.Tenn., W.D.1971) where an injunction was granted against the successful bidder but as to the unsuccessful bidder Judge McRae stated: "This Court does not direct that the contract be awarded to Pace. This shall be determined by the defendants in accordance with the Invitation to Bid and the laws and regulations properly applied to matters of this sort."

Mrs. Della K. McKnew, Acting District Counsel for the Baltimore District Corps of Engineers in response to Invitation for Bids No. DACA 31–73–B–0066 was untimely, non-responsive, contrary to the terms of the invitation, void and of no effect, and

(7) That Plaintiff's motion for summary judgment insofar as it seeks an adjudication as a matter of law that Plaintiff is entitled to a declaratory judgment under Part (b) of Paragraph B of the prayers for relief be, and the same hereby is, *Denied,* and

(8) That Plaintiff's motion for summary judgment insofar as it seeks an adjudication as a matter of law that Plaintiff is entitled to a declaratory judgment under Part (c) of Paragraph B of the prayers for relief be, and the same hereby is, *Granted* to the extent that it is hereby determined and declared that the bid of the Plaintiff William F. Wilke, Inc. to Invitation for Bids No. DACA 31–73–B–0066 was the lowest responsive bid of a responsible bidder but otherwise and except to the extent hereinabove Granted, a declaratory judgment under the remainder of Part (c) of Paragraph B of the prayers for relief is hereby *Denied.*

## ON MOTION TO AMEND JUDGMENT

Invoking Rule 59(e) of the Federal Rules of Civil Procedure, Plaintiff William F. Wilke, Inc., filed a motion on April 23, 1973 to have this Court alter or amend its judgment entered on April 16, 1973. Specifically, Plaintiff asks the Court to amend its judgment by adding (1) a permanent injunction enjoining Defendants and Intervenor-Defendant from proceeding under the contract awarded on a bid the Court has declared to be null and void; (2) a mandatory permanent injunction requiring the Defendants to award the contract to the Plaintiff, since the Court determined and declared it to be the lowest responsive and responsible bidder; and (3) pending a hearing on the motion to amend, the entering of a temporary re-straining order enjoining and restraining the Defendants and Intervenor-Defendant from in any manner performing, permitting the performance of, effectuating or implementing a government contract in respect of the work described in Invitation for Bids No. DACA 31–73–B–0066.

In support of these requests, the Plaintiff states that it construes the Court's decision not to enjoin the Defendants and Intervenor-Defendant from proceeding or performing the contract work "to mean that the Court sanctions the unlawful, illegal award of a government contract . . ." and that the Court sanctions "a contract arising out of the void bid between Defendants and Intervenor-Defendant. . . ." This is a total misconception by the Plaintiff of what the Court sought to do. The Court *granted* to the Plaintiff declaratory relief, which at least heretofore the Court understood to be one of the objects Plaintiff sought to accomplish by this suit. The Court emphasizes that its decision to deny Plaintiff's petition for injunctive relief, should not be taken to mean that the Court necessarily endorses the awarding of a contract on a bid which it has since declared void. Rather, the Court for the reasons delineated in its opinion of April 16, 1973 did not feel on the showing made by the Plaintiff that it should thwart the procurement process already in train by the extraordinary remedy of injunction.

This Court subscribes to the position taken by Judge Leventhal in M. Steinthal & Co. v. Seamans, 147 U.S.App.D.C. 221, 455 F.2d 1289 (1971), and Judge Gesell in Simpson Electric Co. v. Seamans, 319 F.Supp. 684 (D.D.C.1970). While a court may declare the rights and obligations of the parties to a government contract, the cited cases teach that Courts should exercise great restraint in the use of injunctive power to intervene in the awarding of armed forces procurement contracts. Given the availability of alternative relief for the Plaintiff by way of a suit for damages

in the Court of Claims, and a judicial policy which counsels against interference with the executive procurement process, the Court finds no inconsistency in its judgment which denied injunctive relief while granting a declaratory judgment in favor of the Plaintiff.

With respect to Plaintiff's allegedly newly discovered evidence concerning the non-execution of a Gregos subcontract for lumber and millwork, the Court fails to see why this representation, if true, would warrant an alteration of the present judgment.[1] In any event, the subcontractor Jordan Lumber & Millwork Company by affidavit of its Vice President John E. Jordan dated April 20, 1973 confirms that it entered into the subcontract with Gregos on March 29, 1973, the day after Gregos had been advised by the government that its bid had been accepted. The formal subcontract, although not received by Jordan until April 9, 1973, has since been executed.[2] Additionally, it appears that in anticipation of receiving the subcontract from Gregos, Jordan entered into a sub-subcontract with U.S. Plywood for solid core wood doors which was confirmed on April 5, 1973. For the reasons indicated above, Plaintiff's motion to alter or amend the judgment of this Court in Wilke v. Department of the Army, Civ. No. 73–313–HM (D.Md. filed April 16, 1973) will be denied.

Intervenor-Defendant A & M Gregos, Inc. moves the Court to amend paragraph 6 of its order of April 16, 1973 by striking the words "untimely, non-responsive, void and of no effect." In support of this motion, Intervenor-Defendant contends that the Court erred in

relying upon a letter opinion of the General Accounting Office, 51 Comp.Gen. 173 (1971). Specifically, Gregos attaches distinguishing significance to the fact that in the General Accounting Office decision it was noted that the bid in question was submitted after the bid opening officer had announced that it was time for opening of bids and had begun to open the first bid. 51 Comp. Gen. 173, 176 (1971). However, that decision clearly did not turn on the issue of whether or not the bid opening officer made his announcement or even opened the first bid prior to the receipt of the bid in question. Rather, these two matters were merely ancillary or supplementary to the conclusion "that the bid was not delivered until after 1 o'clock p. m., as shown by the clock in the bid opening room" Id. at 177. As the Court sees it, this decision of the General Accounting Office, and the line of authorities cited therein, stand for the proposition that the timeliness of a submitted bid is to be measured against a pre-designated time for bid opening, and not otherwise. See A.S.P.R. 2–303.- 1. Thus, this Court is still of the view that this decision of the Comptroller General supports the result reached in this case.

A & M Gregos, Inc., also urges the Court to amend its order of April 16, 1973, "to declare that the Gregos bid was received in accordance with procurement regulations of the United States as consistently interpreted by the Corps of Engineers, and was properly received and accepted by the bid opening officer." Gregos suggests that on a number of occasions bids have been tendered and

---

1. Plaintiff may feel that the Court, in considering whether an injunction should issue, was moved by the fact that Intervenor-Defendant innocently incurred heavy financial obligations. Presumably, if it could be shown that this load were lighter, the Court (so Plaintiff suggests) would be more inclined to grant injunctive relief. Even if Plaintiff's contention regarding the execution of the lumber and millwork subcontract were true, it is apparent that Gregos still re-

mained obligated on subcontracts, entered into between March 28 and April 7, 1973, whose value exceeded one million dollars. See page 3 of affidavit of Walter F. Rupinski dated April 11, 1973 filed by Intervenor-Defendant A & M Gregos, Inc.

2. Page 2 of Jordan affidavit attached to Intervenor-Defendant Gregos' Opposition To Plaintiff's Motion To Amend Judgment.

accepted in the bid opening room of the Corps of Engineers in Baltimore and that such activity constitutes a local practice which is not inconsistent with the appropriate procurement regulations.[3] The Defendants, Department of the Army of the United States and Robert F. Froehlke, likewise cross move to amend this Court's judgment and order of April 16, 1973, by striking the words "untimely, nonresponsive, void and of no effect," from paragraph 6 of the Court's order. It is contended by Defendants Department of the Army and Froehlke that the bid opening officer acted properly and within the reasonable discretion afforded by the federal regulations in receiving Defendant-Intervenor's bid beyond the time stated in the Invitation for Bids.

As this Court indicated in its opinion of April 16, 1973, the federal regulations governing the submission and opening of bids do not vest the bid opening officer with an elastic discretion to determine the moment up to which bids will be accepted in contravention of the exact time set forth in the invitation for bidding. The purpose of the exact time requirement is not only to give all bidders an equal opportunity, to prevent fraud, and to preserve the integrity of the competitive bid system, but to provide a clear cut-off point after which bids will not be accepted. Consequently, the Court can find no sanction for a local Baltimore bid opening practice, if such in fact exists, which would have permitted the receipt of the A & M Gregos, Inc. bid by the Corps of Engineers at 3:04 p. m. or any other time after 3:00 p. m. on March 13, 1973. Thus, the Court does not feel that the bid opening officer may properly receive a bid even "a few minutes . . . past the time stated in the Invitation." See 32 C.F.R. § 2–303–1. Nor does the Court agree with the Defendants Department of the Army and Robert F. Froehlke that this procedural deviation is at "most a mere irregularity . . . without prejudice to the rights of any interested bidder." See Constructores Civiles de Centroamerica, S. A. (Concica) v. Hannah, 148 U.S.App.D.C. 159, 459 F.2d 1183, 1186 (1972); Scanwell Laboratories, Inc., v. Shaffer, 137 U.S.App.D.C. 371, 378–379, 424 F.2d 859, 866–867 (1970). Thus, the cross motions of Intervenor-Defendant A & M Gregos, Inc. and Defendants Department of the Army and Robert F. Froehlke to amend this Court's Judgment and Order of April 16, 1973 will be denied.

3. Neither the Rupinski affidavit nor the March 23, 1973 Gregos letter referred to by Gregos in support of this suggestion cites a single specific instance where a bid was tendered and accepted in the bid opening room of the Corps of Engineers in Baltimore after the exact time for receipt of bids fixed in the invitation. Not only would such a bid be a late bid and therefore unacceptable, it would also violate the instruction to bidders that "Hand carried bids must be deposited in a depository provided therefor in Room 1225." Additionally, the affidavit, dated April 12, 1973 of Plaintiff's project manager A. C. Seeman (filed in support of Plaintiff's motion for summary judgment) who during the last twenty-one years has attended not less than fifteen bid openings conducted by the Corps of Engineers, Baltimore District, states flatly "I have never witnessed at any bid opening conducted by the Department of the Army, Baltimore District, Corps of Engineers the submission of a bid in the bid opening room and, of course, I have never seen a bid accepted in the bid opening room." Indeed, Mr. Seeman cites on his affidavit an instance where he wanted to hand deliver a bid in the room in which the bid depository box was located for receipt of bids until 2:30 p. m. only to find the depository box was being moved to the bid opening room. En route he attempted to hand deliver the bid but the tender was refused as being too late, it then being 2:32 p. m.