**RENTAL EQUIPMENT CO., INC., Plaintiff**

**v.**

**MERIDIAN ENGINEERING CO., INC., et al., Defendants**

Civil No. 216-1974

District Court of the Virgin Islands

Div. of St. Croix

April 9, 1974

GEOFFREY W. BARNARD, ESQ., Christiansted, St. Croix, V.I., *for plaintiff*

NICHOLS & SILVERLIGHT, ESQS., Christiansted, St. Croix, V.I., *for defendants*

YOUNG, *District Judge*

MEMORANDUM OPINION, ORDER AND JUDGMENT

This is an action to set aside a road construction contract awarded under the Preferred Bidders Act, 31 V.I.C. § 236a, and to enjoin its performance. The Act, the pertinent

provisions of which are set out in the footnote 1,[1] establishes limited preferences for certain categories of bidders on government contracts. A "preferred bidder" is defined as a person who was born in the Virgin Islands or who has resided at least eight years in the Virgin Islands. It also includes a corporation or partnership in which the majority interest is held by native-born Virgin Islanders or by persons who have resided in the Virgin Islands for at least eight years. The "preferred bidder," whether a person or a company, must maintain his or its principal place of business in the Virgin Islands. Under § 236a(b) the Government "shall purchase or contract" with a preferred bidder if the cost to the Government is within 15% of the low bid and the quality of the preferred bidder's services are equivalent to those of lower bidders.

The instant case arises from an Invitation to Bid extended by the Government on December 4, 1973, regarding resurfacing work on the East End Road between Tide Village and Green Cay. Through a clerical error, the advertisement stated that the "Preferred Bidders Act #2995,

[1] § 236a. Preferred bidders

(a) For the purposes of this section "preferred bidder" means (1) a person who has been a bona fide continuous resident of the Virgin Islands for at least 8 years or was born in the Virgin Islands; or (2) a firm, partnership or corporation in which at least fifty-one (51%) percent of the legal or equitable ownership is held by a person or persons who have been bona fide continuous residents of the Virgin Islands for at least 8 years or who were born in the Virgin Islands; and (3) said person, firm, partnership or corporation is licensed in and maintains his or its principal place of business in the Virgin Islands and who owns, operates, or maintains a store, warehouse, or other place of business in the Virgin Islands or is the duly authorized agent, dealer, distributor or representative in the Virgin Islands for the materials, supplies, articles, or equipment of the general character described by the specifications and required under this contract.

(b) The Commissioner of Property and Procurement shall purchase or contract for supplies, materials, equipment, and contractual services from suppliers in the Virgin Islands who are preferred bidders where—

(1) the total cost thereof to the Government does not exceed by more than 15% the cost of such supplies, materials, equipment, or contractual services if obtained from other than a preferred bidder; and

(2) the quality and availability of the supplies, materials, equipment, or contractual services are substantially equivalent.

423

approved 4/16/71, will *not* apply."[2] In due course bids were received, among them the low bid from Rental Engineering Co., Inc. [hereinafter "Rental"] in the amount of $346,959.36, and a slightly higher one from Meridian Engineering Co., Inc. [hereinafter "Meridian"] in the amount of $348,416.38. Meridian qualified as a preferred bidder; but Rental did not, since it is a wholly-owned subsidiary of Devcon International Corp., a Florida corporation, and thus is not owned by Virgin Islanders. Correcting the error in the advertisement for bids, the Government applied the Preferred Bidders Act and awarded the contract to Meridian; a Notice to Proceed issued on March 15, 1974. Shortly thereafter Meridian began performance of its contract. Meanwhile, Rental alleges that in reliance upon its position as low bidder it "invested substantial sums in preparation for the work described." Indeed, the Government never notified Rental of the error in the advertisement and invitation to bid and, further, did not notify Rental of the award of the contract to Meridian.

On March 22, 1974, Rental brought suit against Meridian and the Government to have "the contract . . . set aside as having been awarded contrary to law, and [to have] . . . the contract . . . awarded to Rental Equipment Co., Inc., as low bidder." On the same day, Rental moved for a temporary restraining order under F. R. Civ. Pro. Rule 65, and supported this motion with an affidavit alleging that Rental was being "irreparably damaged." A TRO was issued ex parte at 4:48 P.M. on the 22nd. On March 26, 1974, Meridian moved to dissolve the TRO on the grounds that it did not conform with the procedural requirements of Rule

---

[2] The project was financed by territorial funds and matching federal funds. 31 V.I.C. § 249 states "[t]he provisions of this chapter shall not apply to purchase orders or contracts where Federal funds are involved, *and* where federal law, rules or regulations apply. . ." [emphasis supplied]. However, by administrative interpretation this section has been held not to apply to matching funds projects. Furthermore, no applicable federal law, rules, or regulations have been brought to the Court's attention, and thus the conjunctive prerequisite is not applicable.

65(b) and (c). This motion came on for hearing March 27, at which hearing it first appeared that at the time of the issuance of the TRO Meridian had already partially performed the contract work, to the extent of laying one mile of proposed four mile road base,[3] and was suffering substantial daily losses as a result of the TRO. At this hearing, as well, Rental first advanced its argument that the Preferred Bidders Act was unconstitutional. It was decided at the hearing that the TRO would be continued, if Rental would post a suitable bond to cover Meridian's losses, until a hearing and decision on Rental's claims for permanent relief could be had. On March 28, a $150,000 bond was put up; an evidentiary hearing on the merits of the case was held March 29.[4] The decision of this Court vacating the TRO and denying Rental relief was made on April 5, 1974. The reasons for this decision are set out in the remainder of this Opinion.

## I. Policies Favoring Completion of Partially Executed Governmental Construction Contracts

 Litigation involving pending governmental contracts is generally disfavored by the courts. E.g., Blackhawk Heating & Plumbing Co. v. Driver, 433 F.2d 1137, 1141 (D.C. Cir. 1970) ("the mere fact that a party has standing to sue does not entitle him to render uncertain for a prolonged period of time government contracts . . ."). Thus the doctrine of laches is strictly applied to plaintiffs who seek to challenge executed or partially executed public contracts. See Barrett v. Union Bridge Co., 117 Ore. 220, 225, 243 P. 93, 96 (1926); Drenning v. Topeka, 148 Kan. 366, 370–71, 81 P.2d 720, 723–24 (1938). Furthermore,

---

[3] The affidavit on which the TRO was based erroneously alleged that "the contract was awarded to Meridian and work commenced thereon as of to-day's date [March 22]."

[4] The Government appeared by counsel at this hearing and took a position in support of Meridian and of continuing its contractual relationship with that company.

judicial discretion in such cases should be exercised with reference to considerations of "public interest." See M. Steinthal & Co. v. Seamans, 455 F.2d 1289, 1302 (D.C. Cir. 1971); cf. Virginian Ry. v. System Federation No. 40, 300 U.S. 515, 552, 57 S.Ct. 592, 81 L.Ed. 789 (1937). For example, the mere fact that a successful bid is adjudged "untimely, unresponsive, contrary to the terms of the invitation, void and of no effect" does not mean an unsuccessful bidder is entitled to any relief, and indeed the "granting of any relief is unusual." William F. Wilke, Inc. v. Department of the Army, 485 F.2d 180, 182 (4th Cir. 1973) aff'g 357 F.Supp. 988 (D. Md.); accord 52 Comp. Gen. 215 (1972) (opinion of Comptroller General that let contracts should be cancelled only if their illegality is "palpable" on the face of the enabling statute).

In the instant case, the detriment to public interests from cancelling or voiding Meridian's contract is two-fold. On the one hand, there is an interest in speedy completion of the road project. If Meridian's contract were voided, there would ensue an additional delay while a new contract was bid on.[5] Then too, the start-up procedures which Meridian has already undertaken would have to be repeated. On the other hand, there is the financial loss which cancellation would entail to the public. It is highly likely that Meridian could recover from the Government for the work already done on a quantum meruit or implied contract theory. See, generally, 65 Am. Jur.2d Public Works & Contracts §§ 151 et seq.; 56 Am.Jur.2d Municipal Corporations §§ 519 et seq. This recovery would include start-up expenses normally allocable over an entire job. In its new contract to complete the road the Government would have to pay for

---

[5] To be sure, Rental seeks to avoid this step by having its low bid declared the operative contract. This course is not possible since Meridian has partially performed, the precise job on which Rental bid no longer exists, and thus there is a failure of consideration for its contract price. See A. Corbin, Contracts § 1255 (1962).

426

all these start-up expenses again. Finally, the price of the new contract might be affected by intervening inflation and shortages. In sum, it clearly appears that the public interest would be harmed by the cancellation of Meridian's partially executed construction contract.

An analogous result is reached under the traditional balancing of harms analysis employed in determining the appropriateness of injunctive or other equitable relief. City of Harrisonville v. W. S. Dickey Clay Manuf. Co., 289 U.S. 334, 77 L.Ed. 1208, 53 S.Ct. 602 (1933); cf. Restatement of Torts § 941. If the injunction is granted in the present case, the harm to the Government will consist in the delay and substantial financial loss noted above. Even if it be assumed that Meridian cannot recover against the Government for work done, the costs of its work must still be weighed against injunctive relief since they will then be borne by Meridian. In any case, Meridian will be compelled to forego its profit on its contract and bear the expenses and uncertainties of attempting to recover against the Government. By comparison, the harm to Rental in the event its requested injunction is denied seems relatively slight.[6] Apparently Rental's major preparatory expense in reliance upon its low bid was the purchase of several trucks, the cost of which should substantially be recoverable through use in other construction work or resale. This contrasts with Meridian's large, nonrecoverable expenses of starting-up, maintaining an asphalt plant, and assembling crews of construction workers. It might be added that the benefit which Rental's lower bid price offered the Government was trivial—there was less than a $2,000 difference from Meridian's bid. Furthermore, it is far from clear that if Meridian's performance is enjoined Rental will actually obtain

---

[6] Needless to say, any losses Rental may suffer under its injunction bond should not be weighed in the balance, since these expenses could have been wholly avoided by not bringing suit and are a risk properly assumed by a party seeking the injunctive remedy.

the new contract, see n. 5 supra, and thus make good its reliance losses. A final point with regard to balancing harms is the special weight to be given to harms imposed upon the citizenry when the Government is enjoined. "Where an important public interest may be prejudiced, the reasons for denying the injunction may be compelling." 289 U.S. supra at 338. For such reasons, equitable relief is not often an appropriate remedy in suits regarding partially executed public construction contracts, and the parties to such contracts, and third persons, should generally be left to their remedies at law, if any.

## II. Award of Construction Contract to Meridian Was Proper Under Preferred Bidders Act

Although I have concluded that strong policy considerations militate against judicial disruption of the performance of partially executed construction contracts, it is still important to examine the statute pursuant to which the contract in this case was awarded. This is because Rental has relied to a certain extent in its arguments on the fact that the advertisement for bids on the road work stated that the "Preferred Bidders Act . . . will *not* apply." The effect of such language can be determined by referring to the statute itself and judicial decisions exploring the contractual significance of an advertisement for bids.

As a starting point, it should be noted that there is no general nonstatutory requirement that governmental bodies solicit bids for construction contracts or that they award such contracts to the lowest bidder. Davis v. Santa Ana, 108 Cal. App.2d 669, 239 P.2d 656, 661 (1952) (In absence of specific statutory requirement, municipal contracts need not be let under competitive bidding); Deary v. Dudley, 343 Mass. 192, 178 N.E.2d 83, 85 (1961) (In absence of provision requiring acceptance of lowest bid, awarding of contracts is left to reasonable judgment of municipal offi-

cers); McQuillin, Municipal Corporations § 29.31. It follows, therefore, that a statute providing that governmental authorities *may* advertise for bids will not be construed as requiring such bids. Reiter v. Chapman, 177 Wash. 392, 31 P.2d 1005, 1007 (1934); 64 Am.Jur.2d, Public Works and Contracts § 36. The general nonstatutory freedom to contract is unaffected by such a permissive statute.

Of a different nature and of considerably more importance, however, are those statutes which require competitive bidding or dictate certain procedures which *must* be followed by governmental authorities in awarding contracts. For example, statutes customarily require competitive bidding if the contract in question involves a sum of money in excess of some stated minimum. C. Antieau, 1A Municipal Corporation Law § 10.26. Unlike the provisions of permissive statutes, such requirements are limitations "upon the general power of the municipality to make contracts for public improvements." Lassiter & Co. v. Taylor, 99 Fla. 819, 128 So. 14, 69 A.L.R. 689, 693 (1930). A contract falling within the mandatory language of such a statute "cannot lawfully be made in any other way." 64 Am.Jur.2d, Public Works and Contracts § 36. It follows, therefore, that unless the statute provides a procedure whereby the contracting authority may disregard the statutory requirements in a given case, those requirements cannot be waived.

█ It is now necessary to turn to the statute under which Meridian was awarded the construction contract at issue in this case. When certain conditions, see n. 1 supra, are satisfied, Section 236a(b) of Title 31 states that "the Commissioner of Property and Procurement *shall* . . . contract . . . [with] suppliers in the Virgin Islands who are preferred bidders." [Emphasis supplied.] The word "shall," utilized by the legislature, is "a word of command . . . it is generally imperative or mandatory." People v.

O'Rourke, 13 P.2d 989, 992 (Cal. App. 1932). Because the statute employs mandatory language, it must be viewed as a limitation on the power of the government to contract. Meridian was a preferred bidder within the meaning of the act. As such, the contract had to be awarded to it. The contract could *not* lawfully have been made with Rental.

The remaining question is whether the advertisement for bids stating that the Preferred Bidders Act would not apply can affect this conclusion. It has already been stated that the provisions of a mandatory statute cannot be waived by the contracting authority. But it should further be inquired whether the invitation for bids can create any contractual rights in Rental which may affect Meridian's right to proceed with the work.

■ It is a settled principle of law that an advertisement for bids is nothing more than a solicitation of such bids. 64 Am.Jur.2d, Public Works and Contracts § 53. It is not an offer but rather an invitation to make offers. Therefore, the invitation itself cannot impose any contractual obligation on the government. William A. Berbusse, Jr., Inc. v. North Broward Hospital Dist., 117 So.2d 550, 552 (Fla. App. 1960). Similarly, it cannot and does not confer upon Rental the right to interfere with contracts lawfully entered into by the Government. Although this result may appear harsh when one is innocently misled by a bid advertisement, a contrary rule creating contract rights in potential bidders would lead to great injustice and uncertainty in the law of government contracts.

## III. This Court Need Not Reach the Constitutionality of the Preferred Bidders Act

Perhaps anticipating the conclusion of the previous section that Meridian was properly awarded the contract under the Preferred Bidders Act, Rental has argued that

the Act is unconstitutional and that consequently Meridian's contract should be voided. In addressing this argument I will first consider whether the court can reach the constitutional issue under the facts of this case. It will then be useful to inquire whether the contract should be voided, even if the statute were determined to be unconstitutional.

In challenging the constitutionality of the Preferred Bidders Act, Rental invokes the equal protection clause of the 14th Amendment, made applicable in the Virgin Islands by section 3 of the Revised Organic Act of 1954.[7] It is argued that the preference accorded a certain defined category of bidders is arbitrary, capricious and whimsical. Particular emphasis is placed on the use of an 8-year residency or "Virgin Islands birth" test as ultimately determinative of one's preferred status. Although these standards are of serious concern to the Court and their constitutionality might well be questioned by one more immediately affected by them, they cannot be singled out by this Court in this case to declare the Act unconstitutional.

The factors which lead me to this conclusion are two-fold, involving related considerations of Rental's standing to challenge the Act's constitutionality and principles of judicial restraint. In connection with Rental's "standing" it is well recognized that "one cannot assert theoretical inequalities in a statute when he is not affected by the discrimination which he alleges exists." 16 Am.Jur.2d, Constitutional Law § 123. A resident of the Virgin Islands for 7 years might well raise the rationality of the 8-year standard applied by the statute.[8] But Rental's ownership is

---

[7] Although the equal protection clause is, in a sense, statutorily, rather than constitutionally, imposed in the Virgin Islands as a limitation on the power of the legislature, its fundamental protection of the public's interests in freedom from arbitrary action will be preserved to the full extent provided by the constitutional guarantee. Cf. Simmonds v. Government Employees' Service Comm'n, 2 St.X.Supp. 520 (1973).

[8] While certain fundamental interests affected by durational residency requirements in other contexts have led courts to question even 1 year wait-

431

entirely vested in a nonresident corporation. No discrimination by reason of the length of Rental's owner's residency is presented in this case. Nor can a corporation, the stock of which is held not by an individual but by another corporation, argue that it is discriminated against because of its owner's birthplace. Instead, Rental's argument must question the basic legislative policy on which the statute is premised[9]—that preferred status should be accorded locally *owned* and operated bidders. Insofar as the constitutional argument is so structured, I would feel compelled to hold that the Act's discrimination is not violative of the equal protection clause because it furthers a rational legislative objective. Virgo Corporation v. Paiewonsky, 6 V.I. 256, 384 F.2d 569 (3d Cir. 1967), cert. denied, 390 U.S. 1041 (1968), reh. denied, 392 U.S. 917; Gannet Corp. v. Stevens, 282 F.Supp. 437 (D.C.V.I. 1968) (Maris, J.); 1 V.I.Op.A.G. 74. The legislature might well choose to encourage development of local business enterprises[10] by providing for preferred bidding status and this legislative judgment cannot be upset because Rental or this Court disagrees with the policy of the law.

Thus far, I have stated the conclusion that the constitutional question should not be reached in terms of Rental's standing to raise it. The same considerations applicable there suggest that the case is an appropriate one for exercise of judicial restraint in choosing not to reach

---

ing periods, Shapiro v. Thompson, 394 U.S. 618, 22 L.Ed.2d 600, 89 S.Ct. 1322 (1969), Dunn v. Blumstein, 405 U.S. 330, 31 L.Ed.2d 274, 92 S.Ct. 995 (1972), the legislative policy furthered by the Preferred Bidders Act might rationally and constitutionally support a one-year durational residency requirement.

[9] Even the 15% bid preference, which in an appropriate case might be held arbitrarily excessive in view of the legislative policy, is not at issue here where the difference in bids was much less substantial.

[10] Local business enterprise must necessarily require local operation *and* ownership if the full objective of the law is to be achieved. Because road construction work must be done on the island, every bidder could satisfy a "local operations" test. The objective of economic development, then, would necessitate some requirement of local *ownership*.

the constitutional issue. The policy which must guide me is well stated in Blair v. U.S., 250 U.S. 273, 63 L.Ed. 979, 39 S.Ct. 468, (1919):

Consideration of propriety as well as long-established practice demand that we refrain from passing upon the constitutionality of an act of Congress unless obliged to do so in the proper performance of our judicial function when the question is raised by a party whose interests entitle him to raise it.

If this statute is unconstitutional, the facts of this case do not present those aspects of the law's classification scheme which might fail to satisfy the equal protection clause. Therefore, I cannot reach the constitutional question at this time.

Finally, it would seem that even if the Preferred Bidders Act were declared unconstitutional, strong policy arguments militate against voiding the otherwise legal contract awarded pursuant to it. The policy considerations are especially weighty where, as in this case, work has already begun under the contract. The Government would likely be estopped to deny the validity of the contract and avoid performance on the basis of the unconstitutionality of the Act. 56 Am.Jur.2d, Municipal Corporations § 530. Thus, at least part payment would be due Meridian on the contract or, perhaps, on a quantum meruit basis. Then, the public would suffer additional expense and delay while new bids were received. Because substantial expense and inconvenience would befall both the public and Meridian were the preexisting contract to be voided, I would feel compelled to avoid this drastic remedy, even if the statute were held unconstitutional.

### ORDER AND JUDGMENT

For the reasons stated in the above Memorandum Opinion, it is hereby ADJUDGED AND ORDERED:

(1) that plaintiff's application for a preliminary in-

junction restraining further performance by Meridian of its contract is hereby DENIED; and

(2) that as the decision at this early stage of the proceedings has resolved the ultimate issues of the propriety of a permanent injunction and Rental's right to have Meridian's contract voided, Judgment will enter in favor of defendants Meridian and the Government of the Virgin Islands and the complaint is therefore DISMISSED; and

(3) that defendant Meridian be awarded costs and attorneys' fees in the amount of $1,000.